## Exhibit A

**Stipulation Regarding Post-Default Use of Cash Collateral**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ViewRay, Inc., *et al.*, | Case No. 23-10935 (KBO) |
| Debtors.[1] | **Re: D.I. 226** |

### STIPULATION REGARDING POST-DEFAULT USE OF CASH COLLATERAL

This Stipulation is entered into between and among each of the following parties, by and through their respective undersigned counsel: (i) ViewRay, Inc. and its affiliate ViewRay Technologies, Inc. (collectively, the "Debtors"), the debtors and debtors in possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases"); (ii) the Prepetition Agent on behalf of itself and the other Prepetition Secured Parties; and (iii) the DIP Agent on behalf of itself and the other DIP Secured Parties.  Capitalized terms not otherwise defined herein have the meanings ascribed to them in the *Final Order (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Secured Parties; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* dated August 29, 2023 [D.I. 226] (the "Final DIP Order").

**WHEREAS,** the Final DIP Order provides for, among other things, the extension of credit pursuant to the DIP Facility and the consensual use of the Lenders' Cash Collateral by the Debtors, each subject to the terms and conditions set forth therein and in the other Operative Documents;

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are ViewRay, Inc. (7485) and ViewRay Technologies, Inc. (8429). The mailing address for each of the Debtors is 1099 18th Street Suite 3000, Denver, CO 80202.

**WHEREAS**, the Final DIP Order provides that it shall be an Event of Default for the Debtors to have failed to "[o]n or before September 19, 2023, . . . have delivered to the DIP Lenders and the Prepetition Secured Parties a fully executed asset purchase agreement that either (i) provides sufficient net cash proceeds to indefeasibly pay in full in cash all of the DIP Facility Obligations and the Prepetition Secured Obligations and is otherwise acceptable to the DIP Lenders and the Prepetition Secured Parties in their reasonable discretion, or (ii) is acceptable to the DIP Lenders and the Prepetition Secured Parties in their sole discretion."

**WHEREAS,** consistent with the foregoing, the Court's *Order (I) Approving Bidding Procedures in Connection with the Sale of the Debtors' Business or Substantially All of the Debtors' Assets; (II) Approving Procedures to Designate One or More Stalking Horse Bidders and Associated Bid Protections; (III) Scheduling an Auction for and Hearing to Approve the Sale of the Debtors' Business or Substantially All of the Debtors' Assets; (IV) Approving Notice of the Respective Date, Time, and Place for an Auction and for a Hearing on Approval of Sale; (V) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (VI) Approving the Form and Manner of Notice Thereof; and (VII) Granting Related Relief* dated August 23, 2023 [D.I. 208] (the "Bidding Procedures Order") established September 19, 2023, at 5:00 p.m. (ET) as the deadline for submission of bids for the Debtors' assets (the "Bid Deadline"), subject to the Debtors' right, in consultation with the Consultation Parties (as defined in the Bidding Procedures Order), to extend the Bid Deadline;

**WHEREAS,** the Debtors did not receive any bids for their assets or a signed asset purchase agreement by the Bid Deadline, which resulted in an Event of Default under the Final DIP Order;

**WHEREAS**, pursuant to the Final DIP Order, upon the occurrence of an Event of Default and following five (5) days after delivery of a notice of Event of Default, which may be the Carve-

Out Trigger Notice (as defined below) to the Debtors, the U.S. Trustee, and the Committee (the "Remedies Notice Period"), (a) the Debtors' rights to use Cash Collateral and proceeds of DIP Loans shall immediately terminate, (b) the DIP Secured Parties shall be entitled to independently take any act or exercise any right or remedy as provided in this Final Order or any Operative Document, as applicable, including, without limitation, (i) declare all DIP Obligations owing under the DIP Term Sheet and other Operative Documents to be immediately due and payable; (ii) terminate, reduce, or restrict any commitment to extend additional credit to the Debtors to the extent any such commitment remains; (iii) terminate the DIP Facility and any Operative Document as to any future liability or obligation of the DIP Secured Parties, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations; (iv) invoke the right to charge interest at the default rate under the DIP Term Sheet; and/or (v) stop lending, and (c) the DIP Secured Parties and Prepetition Secured Parties shall have automatic and immediate relief from the automatic stay with respect to the DIP Collateral and Prepetition Collateral (without regard to the passage of time provided for in Bankruptcy Rule 4001(a)(3)), and shall be entitled to exercise all rights and remedies available under the Operative Documents and Prepetition Loan Documents and applicable nonbankruptcy law (subject to the Prepetition Intercreditor Agreement); and the Debtors shall surrender the DIP Collateral and Prepetition Collateral to, and otherwise cooperate with, the DIP Agent and Prepetition Agent in the exercise of their rights and remedies under the Operative Documents and Prepetition Loan Documents and applicable nonbankruptcy law (subject to the Prepetition Intercreditor Agreement).

**WHEREAS,** on September 20, 2023, the Prepetition Agent and DIP Agent sent the Debtors a notice of the Event of Default pursuant to the Final DIP Order (a copy of which is attached as Exhibit 1 hereto), which notice also constituted a Carve-Out Trigger Notice;

US.359753604.10

**WHEREAS,** at the request of certain potential bidders, and after consultation with the Consultation Parties (as defined in the Bidding Procedures Order), the Debtors extended the Bid Deadline to September 26, 2023, at 12:00 p.m. (ET) (the "Extended Bid Deadline"), and the Prepetition Secured Parties agreed to consider promptly any bid(s) that may be submitted by the Extended Bid Deadline and whether, at that time, to consent to the Debtors' further use of Cash Collateral in light of such bid(s);

**WHEREAS,** at the Debtors' request, the Prepetition Secured Parties and DIP Secured Parties agreed to consent to limited continued use of Cash Collateral subject to terms of the Carve-Out Trigger Notice, as applicable, and this Stipulation: (i) to permit the Debtors to maintain operations up through the Extended Bid Deadline; and (ii) if no bid acceptable to the Lenders was received, to permit the Debtors to maintain limited operations for thirty (30) days so as to ensure continuity of care for patients in active treatment on the Debtors' MRIdian systems;

**WHEREAS,** consistent with this agreement, on September 22, 2023, the Prepetition Agent and DIP Agent sent a letter dated September 22, 2023 (a copy of which is attached as Exhibit 2 and hereto), extending expiration of the Remedies Notice Period from September 25, 2023, to September 27, 2023, solely to allow the Debtors limited use of Cash Collateral to make certain disbursements, all as further detailed in such letter; in the meantime, the parties conferred on the terms of this Stipulation to be filed in the event that no bid acceptable to the Prepetition Secured Parties and DIP Secured Parties was received by the Extended Bid Deadline;

**WHEREAS,** other than the protective credit bid of the Prepetition Secured Parties for the Debtors' intellectual property and certain other assets (the "Credit Bid"), no bids were received prior to the Extended Bid Deadline; and, accordingly, the Debtors' use of Cash Collateral has terminated other than on the terms of, and subject to entry into and approval of, this Stipulation;

**NOW, THEREFORE,** for good and valuable consideration, the receipt of which is acknowledged, the Debtors and the Lenders hereby stipulate and agree as follows:

1.    <u>Effectiveness</u>.  This Stipulation shall become effective immediately upon entry of an order of the United States Bankruptcy Court for the District of Delaware approving it and authorizing the Debtors and the Lenders to take any and all actions necessary to carry out the terms hereof.  The date this Stipulation becomes effective shall be referred to herein as the "<u>Stipulation Effective Date</u>").

2.    <u>Limited Use of Cash Collateral</u>.  Notwithstanding expiration of the Remedies Notice Period, the Debtors shall be authorized to use up to (i) $1.675 million of Cash Collateral to fund payroll through September 29, 2023; and (ii) an additional $1.5 million of Cash Collateral (the "<u>Patient Care Wind-Down Amount</u>") between the Stipulation Effective Date and November 1, 2023, to maintain limited operations solely to the extent necessary to provide continuity of care for patients in active treatment on the Debtors' MRIdian systems ("<u>Active Patient Care</u>").  Up to $1.22 million of the Patient Care Wind-Down Amount may be used for fixed costs for purposes of Active Patient Care, including primarily payroll (including payroll from September 29, 2023 through October 2, 2023), without further approval by the Lenders.  The remaining $280,000 of the Patient Care Wind-Down Amount shall be available for variable costs incurred or to be incurred in connection with Active Patient Care, including for inventory purchases, with prior approval of the Prepetition Agent and the DIP Agent.

3.    <u>Payment of Net Cash Balance to Prepetition Agent</u>.  No later than the Stipulation Effective Date (or the following business day, if the Stipulation does not become effective until after the deadline for initiating wire transfers on the Stipulation Effective Date), the Debtors shall pay not less than $8.299 million of their unrestricted cash on hand to the Prepetition Agent for the

ratable benefit of the Prepetition Secured Parties, as required pursuant to the Final DIP Order. If at any time on or after the Stipulation Effective Date the Debtors have unrestricted cash on hand in excess of the as-yet unused portion of the Patient Care Wind-Down Amount, the Debtors shall promptly (and, in any event within three (3) business day of receipt thereof) pay such excess amount to the Prepetition Agent for the ratable benefit of the Prepetition Secured Parties. For the avoidance of doubt, for purposes of this paragraph, the Debtors' unrestricted cash on hand does not include (i) restricted cash of $1,662,500 securing credit cards and letter of credit reimbursement obligations or (ii) any amounts in the Professional Fee Reserve Account.

4.    <u>Termination of Other Uses of Cash Collateral and DIP Commitment</u>.  In light of the Event of Default and the failure of certain conditions precedent to the DIP Lenders' obligation to advance loans under the DIP Facility, the Debtors and the DIP Lenders agree that: (i) the Debtors' rights to use Cash Collateral other than as set forth in this Stipulation has terminated, (ii) any commitment to extend additional credit to the Debtors under the DIP Facility has terminated; and (iii) the DIP Facility and any Operative Document have terminated as to any future liability or obligation of the DIP Secured Parties, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations.  For the avoidance of doubt, the provisions of the Final DIP Order providing adequate protection and lien perfection to the Lenders with respect to Cash Collateral, including, but not limited to, sections 4, 5.1, and 5.5 of the Final DIP Order, shall remain in full force and effect except as expressly modified herein.

5.    <u>Withdrawal of Credit Bid</u>.  Upon the Stipulation Effective Date, the Debtors and the Prepetition Secured Parties agree that the Credit Bid is deemed withdrawn and of no further force and effect, which withdrawal, for the avoidance of doubt, is without prejudice to the Prepetition Secured Parties' right to credit bid in connection with any future sale of their Collateral.

6.      <u>Carve-Out Matters</u>.  For the avoidance of doubt, nothing in this Stipulation shall affect the date of the Carve-Out Trigger Notice or the amount of the Post Carve-Out Trigger Notice Cap for purposes of the Final DIP Order.  The Debtors and the Prepetition Secured Parties and DIP Secured Parties agree that that the amount referenced in Section 5.10(a)(iii) of the Final DIP Order shall be funded from unused funds in the Professional Fee Reserve Account in respect of the Debtor Professionals' Budget Line item under Section 5.10(a)(i) of the Final DIP Order.

7.      <u>Committee Challenge Rights Reserved</u>.  Nothing in this Stipulation shall affect the Committee's Challenge rights under section 5.11 of the Final DIP Order, and any payment made to the Prepetition Secured Parties under this Stipulation shall be subject to claw back or other appropriate remedy to the extent of a successful Challenge affecting such payment.

8.      <u>Further Cooperation</u>.  Consistent with their obligation to surrender DIP Collateral and Prepetition Collateral to, and otherwise cooperate with, the DIP Agent and the Prepetition Agent in the exercise of their rights and remedies under the Operative Documents and Prepetition Loan Documents and applicable nonbankruptcy law (subject to the Prepetition Intercreditor Agreement), the Debtors shall continue to cooperate with the DIP Agent and the Prepetition Agent in the collection of DIP Collateral and Prepetition Collateral.

US.359753604.10

Stipulated and agreed by the parties through their undersigned counsel:

Dated:   September 29, 2023          **FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Patrick A. Jackson*
Patrick A. Jackson (No. 4976)
Ian J. Bambrick (No. 5455)
Jaclyn C. Marasco (No. 6477)
222 Delaware Ave., Suite 1410
Wilmington, DE 19801
Tel: (302) 467-4200
Fax: (302) 467-4201
patrick.jackson@faegredrinker.com
ian.bambrick@faegredrinker.com
jaclyn.marasco@faegredrinker.com

Michael P. Pompeo (*pro hac vice*)
1177 Avenue of the Americas, 41st Floor
New York, NY 10036
Tel: (212) 248-3140
Fax: (212 248-3141
michael.pomepeo@faegredrinker.com

*Counsel to the Debtors and*
*Debtors in Possession*

US.359753604.10

Dated:   September 29, 2023

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Matthew B. Harvey*
Matthew B. Harvey (No. 5186)
1201 N. Market Street, 16th Floor
Wilmington, DE 19801
Tel: (302) 658-9200
Fax: (302) 658-3989
mharvey@morrisnichols.com

-and-

**HOGAN LOVELLS US LLP**
Frederick S. Cristman
Columbia Square
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone: (202) 637-5468
Facsimile: (202) 637-5910
frederick.cristman@hoganlovells.com

-and-

Matthew Schernecke
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-5535
Facsimile (212) 918-3100
matthew.schernecke@hoganlovells.com

*Counsel to MidCap Financial Trust, as DIP Agent and
MidCap Funding IV Trust, as Prepetition Agent*

US.359753604.10

## EXHIBIT 1

**September 20, 2023, Notice of Default and Carve-Out Trigger Notice**

September 20, 2023

BY EMAIL TRANSMISSION:

**<u>DEBTORS</u>**
ViewRay, Inc., and ViewRay Technologies, Inc.
Attn: Paul Ziegler, Chief Executive Officer
Email: pziegler@viewray.com

**<u>DEBTORS' COUNSEL</u>**
FAEGRE DRINKER BIDDLE & REATH LLP
Patrick A. Jackson (patrick.jackson@faegredrinker.com)
Ian J. Bambrick (ian.bambrick@faegredrinker.com)
Jaclyn C. Marasco (jaclyn.marasco@faegredrinker.com)
Michael P. Pompeo (michael.pompeo@faegredrinker.com)
Maria J. Cho (maria.cho@faegredrinker.com)

**<u>COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS</u>**
CLEARY GOTTLIEB STEEN & HAMILTON LLP
David J. Botter (dbotter@cgsh.com)
Lisa M. Schweitzer (lschweitzer@cgsh.com)
Thomas S. Kessler (tkessler@cgsh.com)
Brad Lenox (blenox@cgsh.com)

POTTER ANDERSON & CORROON LLP
Christopher M. Samis (csamis@potteranderson.com)
Aaron H. Stulman (astulman@potteranderson.com)
Katelin A. Morales (kmorales@potteranderson.com)
Maria Kotsiras (mkotsiras@potteranderson.com)

**<u>OFFICE OF THE UNITED STATES TRUSTEE</u>**
Benjamin A. Hackman (benjamin.a.hackman@usdoj.gov)

Re:    Notice of Event of Default; Carve-Out Trigger Notice

Dear Ladies and Gentlemen:

Reference is made to (a) the jointly administered chapter 11 cases captioned *In re ViewRay, Inc.*, et. al., Case No. 23-10935 (KBO) (the "<u>Chapter 11 Cases</u>") concerning ViewRay, Inc., and ViewRay Technologies, Inc., in each case as a debtor and debtor in possession (together, the "<u>Debtors</u>"), and (b) the *Final Order (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Secured Parties; (III) Authorizing Use of Cash Collateral; (IV) Modifying The Automatic Stay; and (V) Granting Related Relief* (Docket No. 226) (the "<u>Final DIP Order</u>"), entered in the Chapter 11 Cases on August 29, 2023, authorizing, among other things, the Debtors to use Cash Collateral and enter into the DIP Facility, each on the terms and conditions set forth therein and in the other Operative Documents.

All capitalized terms used and not otherwise defined herein are used herein as defined in the Final DIP Order.

This letter is to notify the parties listed above that the following Event of Default set forth in Section 1.b of Exhibit 3 to the Final DIP Order has occurred and is continuing and constitutes and is an Event of Default under the Final DIP Order:

> The Debtors failed to deliver to the DIP Lenders and the Prepetition Secured Parties,  on or before September 19, 2023, a fully executed asset purchase agreement that either (i) provides sufficient net cash proceeds to indefeasibly pay in full in cash all of the DIP Facility Obligations and the Prepetition Secured Obligations and is otherwise acceptable to the DIP Lenders and the Prepetition Secured Parties in their reasonable discretion, or (ii) is acceptable to the DIP Lenders and the Prepetition Secured Parties in their sole discretion.

As of the date of this letter, the Debtors have not delivered any asset purchase agreement or qualifying bid to the DIP Lenders and Prepetition Secured Parties, let alone a fully executed asset purchase agreement that either (i) provides sufficient net cash proceeds to indefeasibly pay in full in cash all of the DIP Facility Obligations and the Prepetition Secured Obligations and is otherwise acceptable to the DIP Lenders and the Prepetition Secured Parties in their reasonable discretion, or (ii) is acceptable to the DIP Lenders and the Prepetition Secured Parties in their sole discretion.

For purposes of the Final DIP Order, this letter shall also constitute and is a "Carve-Out Trigger Notice", which shall mean it is a written notice delivered by email (or other electronic means) by the DIP Lenders or Prepetition Agent to counsel to the Debtors, the U.S. Trustee, and counsel to the Committee, which notice is being delivered following the occurrence and during the continuation of an Event of Default, and this letter invokes the Post Carve-Out Trigger Notice Cap.

Given the occurrence and notice of the foregoing Event of Default and following five (5) days after delivery of this notice of Event of Default, which notice is the Carve-Out Trigger Notice to the Debtors, the U.S. Trustee, and the Committee ("Remedies Notice Period") (a) the Debtors' rights to use Cash Collateral and proceeds of DIP Loans shall immediately terminate, (b) the DIP Secured Parties (i) declare all DIP Obligations owing under the DIP Term Sheet and other Operative Documents, if any, to be immediately due and payable; (ii) terminate any commitment to extend additional credit to the Debtors to the extent any such commitment remains; (iii) terminate the DIP Facility and any Operative Document as to any future liability or obligation of the DIP Secured Parties, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations; (iv) invoke the right to charge interest at the default rate under the DIP Term Sheet; (v) declare their intent to stop lending; and (vi) declare their intent to take any act or exercise any right or remedy as provided in the Final DIP Order or any Operative Document, and (c) the DIP Secured Parties and Prepetition Secured Parties shall have automatic and immediate relief from the automatic stay with respect to the DIP Collateral and Prepetition Collateral (without regard to the passage of time provided for in Bankruptcy Rule 4001(a)(3)), and shall be entitled to exercise all rights and remedies available under the Operative Documents and Prepetition Loan Documents and applicable nonbankruptcy law (subject to the Prepetition Intercreditor Agreement); and the Debtors shall surrender the DIP Collateral and Prepetition Collateral to, and

otherwise cooperate with, the DIP Agent and Prepetition Agent in the exercise of their rights and remedies under the Operative Documents and Prepetition Loan Documents and applicable nonbankruptcy law. Notwithstanding the foregoing, during the Remedies Notice Period, the DIP Agent and Prepetition Agent, as applicable, shall have no obligation to make DIP Loans or remit Cash Collateral they are holding to the Debtors, and, during the Remedies Notice Period, the Debtors may only use the Cash Collateral held by the Debtors to fund postpetition operational expenditures in accordance with the Budget.

This letter is not and shall not be deemed to be a waiver of any of the DIP Agent's or any DIP Secured Party's or Prepetition Secured Party's rights, powers, privileges or remedies against the Debtors, any guarantor, any other loan party or any other person or entity, a waiver of the Event of Default or a waiver of any other default or Event of Default under the Operative Documents or the Prepetition Loan Documents. No action, inaction or acquiescence by the DIP Agent or DIP Secured Party or Prepetition Secured Party, including, without limitation, the acceptance of any payment under the Final DIP Order, shall constitute a waiver of any of the DIP Agent's or any DIP Secured Party's or Prepetition Secured Party's rights, powers, privileges or remedies against the Debtors, any guarantor, any other loan party or any other person or entity, a waiver of the Event of Default or a waiver of any other default or Event of Default under the Operative Documents or the Prepetition Loan Documents. The DIP Agent, each other DIP Secured Party, and each Prepetition Secured Party reserves and preserves all other rights and remedies available to it as a result of the Event of Default. No failure or delay by the DIP Agent, any DIP Secured Party or any Prepetition Secured Party in the exercise of any other rights and remedies shall constitute a waiver of any such right or remedy or the Event of Default or other default or Event of Default under the Operative Documents or the Prepetition Loan Documents. Each such right or remedy shall be cumulative. All terms and conditions of the Final DIP Order and other Operative Documents and the Prepetition Loan Documents shall remain in full force and effect unless and until the DIP Agent or Prepetition Agent, as applicable, notifies you to the contrary. Nothing set forth in this letter shall constitute an obligation on the part of the DIP Agent, any other DIP Secured Party or any Prepetition Secured Party to provide any notice regarding the Event of Default or other Event of Default or of the exercise of any other rights and remedies by the DIP Agent, any other DIP Secured Party or any Prepetition Secured Party.

[Signatures Follow]

**MIDCAP FUNDING IV TRUST,**
**as Prepetition Agent**

By:     Apollo Capital Management, L.P.,
its investment manager

By:     Apollo Capital Management GP, LLC,
its general partner

By: _____
Name:  Maurice Amsellem
Title:   Authorized Signatory

**MIDCAP FINANCIAL TRUST,**
**as DIP Agent**

By:     Apollo Capital Management, L.P.,
its investment manager

By:     Apollo Capital Management GP, LLC,
its general partner

By: _____
Name:  Maurice Amsellem
Title:   Authorized Signatory

## **EXHIBIT 2**

**September 22, 2023, Letter Extending Remedies Notice Period**

US.359753604.10

September 22, 2023

BY EMAIL TRANSMISSION:

**DEBTORS**
ViewRay, Inc., and ViewRay Technologies, Inc.
Attn: Paul Ziegler, Chief Executive Officer
Email: pziegler@viewray.com

**DEBTORS' COUNSEL**
FAEGRE DRINKER BIDDLE & REATH LLP
Patrick A. Jackson (patrick.jackson@faegredrinker.com)
Ian J. Bambrick (ian.bambrick@faegredrinker.com)
Jaclyn C. Marasco (jaclyn.marasco@faegredrinker.com)
Michael P. Pompeo (michael.pompeo@faegredrinker.com)
Maria J. Cho (maria.cho@faegredrinker.com)

**COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
CLEARY GOTTLIEB STEEN & HAMILTON LLP
David J. Botter (dbotter@cgsh.com)
Lisa M. Schweitzer (lschweitzer@cgsh.com)
Thomas S. Kessler (tkessler@cgsh.com)
Brad Lenox (blenox@cgsh.com)

POTTER ANDERSON & CORROON LLP
Christopher M. Samis (csamis@potteranderson.com)
Aaron H. Stulman (astulman@potteranderson.com)
Katelin A. Morales (kmorales@potteranderson.com)
Maria Kotsiras (mkotsiras@potteranderson.com)

**OFFICE OF THE UNITED STATES TRUSTEE**
Benjamin A. Hackman (benjamin.a.hackman@usdoj.gov)

> Re:    Limited Extension of Remedies Notice Period under Final DIP Order,
> Notice of Event of Default, Carve-Out Trigger Notice

Dear Ladies and Gentlemen:

Reference is made to (a) the jointly administered chapter 11 cases captioned *In re ViewRay, Inc.*, et. al., Case No. 23-10935 (KBO) (the "Chapter 11 Cases") concerning ViewRay, Inc., and ViewRay Technologies, Inc., in each case as a debtor and debtor in possession (together, the "Debtors"), (b) the *Final Order (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Secured Parties; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* (Docket No. 226) (the "Final DIP Order"), entered in the Chapter 11 Cases on August 29,

2023, authorizing, among other things, the Debtors to use Cash Collateral and enter into the DIP Facility, each on the terms and conditions set forth therein and in the other Operative Documents, and (c) that certain Notice of Event of Default, Carve-Out Trigger Notice delivered on September 20, 2023 (the "Notice of Default").  All capitalized terms used and not otherwise defined herein are used herein as defined in the Notice of Default or Final DIP Order, as applicable.

Under the terms of the Final DIP Order and pursuant to the Notice of Default, the Remedies Notice Period currently expires on September 25, 2023.  The DIP Secured Parties and Prepetition Secured Parties hereby extend the Remedies Notice Period to and including September 27, 2023, solely to allow the Debtors limited use of Cash Collateral held by the Debtors to make the disbursements in line 1 through line 6 in the budget attached hereto as Exhibit A.

This letter is not and shall not be deemed to be a waiver of any of the DIP Agent's or any DIP Secured Party's or Prepetition Secured Party's rights, powers, privileges or remedies against the Debtors, any guarantor, any other loan party or any other person or entity, a waiver of the Event of Default set forth in the Notice of Default or a waiver of any other default or Event of Default under the Operative Documents or the Prepetition Loan Documents.  No action, inaction or acquiescence by the DIP Agent or DIP Secured Party or Prepetition Secured Party, including, without limitation, the acceptance of any payment under the Final DIP Order, shall constitute a waiver of any of the DIP Agent's or any DIP Secured Party's or Prepetition Secured Party's rights, powers, privileges or remedies against the Debtors, any guarantor, any other loan party or any other person or entity, a waiver of the Event of Default or a waiver of any other default or Event of Default under the Operative Documents or the Prepetition Loan Documents.  The DIP Agent, each other DIP Secured Party, and each Prepetition Secured Party reserves and preserves all other rights and remedies available to it as a result of the Event of Default.  No failure or delay by the DIP Agent, any DIP Secured Party or any Prepetition Secured Party in the exercise of any other rights and remedies shall constitute a waiver of any such right or remedy or the Event of Default or other default or Event of Default under the Operative Documents or the Prepetition Loan Documents. Each such right or remedy shall be cumulative.  All terms and conditions of the Final DIP Order and other Operative Documents and the Prepetition Loan Documents shall remain in full force and effect unless and until the DIP Agent or Prepetition Agent, as applicable, notifies you to the contrary.  Nothing set forth in this letter shall constitute an obligation on the part of the DIP Agent, any other DIP Secured Party or any Prepetition Secured Party to provide any notice regarding the Event of Default or other Event of Default or of the exercise of any other rights and remedies by the DIP Agent, any other DIP Secured Party or any Prepetition Secured Party.

[Signatures Follow]

**MIDCAP FUNDING IV TRUST,**
**as Prepetition Agent**

By:      Apollo Capital Management, L.P.,
its investment manager

By:      Apollo Capital Management GP, LLC,
its general partner

By: _____
Name:  Maurice Amsellem
Title:   Authorized Signatory


**MIDCAP FINANCIAL TRUST,**
**as DIP Agent**

By:      Apollo Capital Management, L.P.,
its investment manager

By:      Apollo Capital Management GP, LLC,
its general partner

By: _____
Name:  Maurice Amsellem
Title:   Authorized Signatory

**Exhibit A – Daily Budget**

**ViewRay**
**Budget**
**$ in Thousands**

| | | |
|---|---|---:|
| 1.) | Estimated Ending Unrestricted Cash Balance (9.22.23) | 11,451 |
| 2.) | Unpaid Invoiced Lender Legal Fees | (452) |
| 3.) | Adj. Ending Unrestricted Cash Balance (9.22.23) | 10,999 |
| 4.) | U.S. Payroll (incl. 1 week in arrears) | (700) |
| 5.) | Globalization Partners Payroll | (400) |
| 6.) | International Contractors Payroll | (100) |
| 7.) | Ending Unrestricted Cash Balance (9.26.23) | 9,799 |
| 8.) | Wind Down Fixed Costs | (1,220) |
| 9.) | Wind Down Variable Costs | (280) |
| 10.) | Ending Unrestricted Cash Balance, post wind down funding (9.27.23) | 8,299 |

*Notes*
*a.) Restricted cash of $1,662,500 is not included in the above starting cash balance*
*b.) No further cash disbursements through 9.26.23 beyond the amount reflected*