## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| ViewRay, Inc., *et al.*, | Case No. 23-10935 (KBO) |
| Debtors.[1] | (Jointly Administered) |
| | **Ref. D.I. 69, 208, 231, 312, 479, 520** |

## ORDER (I) APPROVING THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTORS AND THEIR ESTATES FREE AND CLEAR OF LIENS, ENCUMBRANCES, CLAIMS AND INTERESTS (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF DESIGNATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF

Upon consideration of the *Debtors' Motion for Entry of: (A) an Order (I) Approving Bidding Procedures in Connection with the Sale of the Debtors' Business or Substantially All of the Debtors' Assets; (II) Approving Procedures to Designate One or More Stalking Horse Bidders and Associated Bid Protections; (III) Scheduling an Auction for and Hearing to Approve the Sale of the Debtors' Business or Substantially All of the Debtors' Assets; (IV) Approving Notice of the Respective Date, Time, and Place for an Auction and for a Hearing on Approval of Sale; (V) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (VI) Approving the Form and Manner of Notice Thereof; and (VII) Granting Related Relief; and (B) an Order Authorizing and Approving (I) the Sale of the Debtors' Business or Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Rights, Encumbrances, and Other Interests; and (II) the Assumption and Assignment of Certain Executory Contracts and*

---

[1]     The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, are ViewRay, Inc. (7485) and ViewRay Technologies, Inc. (8429).  The mailing address for each of the Debtors is 2 Thermo Fisher Way, Oakwood, OH 44146.

*Unexpired Leases; and (III) Related Relief* [D.I. 69] (the "<u>Motion</u>")[2], initially filed by ViewRay,

Inc. and its affiliate ViewRay Technologies, Inc., as debtors and debtors-in-possession (together,

the "<u>Debtors</u>"), and as subsequently prosecuted by George L. Miller, as chapter 7 trustee (the

"<u>Trustee</u>") in the above-captioned cases (together, the "<u>Bankruptcy Cases</u>"); and the Court having

entered the *Order (I) Approving Bidding Procedures in Connection with the Sale of the Debtors'*

*Business or Substantially All of the Debtors' Assets; (II) Approving Procedures to Designate One*

*or More Stalking Horse Bidders and Associated Bid Protections; (III) Scheduling an Auction for*

*and Hearing to Approve the Sale of the Debtors' Business or Substantially All of the Debtors'*

*Assets; (IV) Approving Notice of the Respective Date, Time, and Place for an Auction and for a*

*Hearing on Approval of Sale; (V) Approving Procedures for the Assumption and Assignment of*

*Certain Executory Contracts and Unexpired Leases; (VI) Approving the Form and Manner of*

*Notice Thereof; and (VII) Granting Related Relief*, on August 23, 2023 [D.I. 208] (the "<u>Bidding</u>

<u>Procedures Order</u>"), which, among other things, (i) approved bidding procedures (as subsequently

modified and supplemented in accordance with the Bidding Procedures Order, the "<u>Bidding</u>

<u>Procedures</u>"), (ii) approved procedures to designate one or more Stalking Horse Bidders and

associated Bid Protections, (iii) scheduled an Auction and a Sale Hearing, (iv) approved the Notice

of Auction & Sale Hearing, (v) authorized the Assignment Procedures, (vi) approved the form and

manner of notice to each relevant non-debtor counterparty to a Contract (each, a "<u>Non-Debtor</u>

<u>Counterparty</u>") of (A) the Debtors' calculation of Cure Costs and (B) the assumption and

assignment of the Contracts, and (vii) granted related relief; and the Trustee having solicited Bids

in accordance with the Bidding Procedures and the Trustee's *Supplemental Notice of Extension of*

---

[2]    Unless otherwise indicated, capitalized terms used, but not defined, herein have the meaning ascribed to them in the Asset Purchase Agreement (defined below) and, if not defined therein, in the Bidding Procedures Order (defined below).

*Certain Deadlines in the Bidding Procedures Order* dated December 13, 2023 [D.I. 479] ("Supplemental Notice"); and the Trustee having conducted the Auction in accordance with the Bidding Procedures; and the Trustee having selected a Successful Bidder as having the highest or otherwise best Qualified Bid for those assets of the bankruptcy estates in the Bankruptcy Cases (together, the "Estates") set forth in the Asset Purchase Agreement, dated January 12, 2024, between MNP Holdings LLC ("Buyer") and the Trustee (the "Asset Purchase Agreement"), which is attached hereto as **Exhibit A** entered into with Buyer, as Successful Bidder (collectively, the "Purchased Assets"), and which are the subject of this order (this "Sale Order"), at the conclusion of the Auction; and the Court having conducted and concluded a hearing on January 18, 2024 (the "Sale Hearing"), to consider approval of (i) the sale of the Purchased Assets under the Asset Purchase Agreement (the "Sale") free and clear of all liens, claims, and other Encumbrances (as defined below); and (ii) the assumption and assignment of certain executory contracts and unexpired leases; and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Sale; and upon the record of the Sale Hearing, including the evidence proffered therein, and after due deliberation thereon, and good cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT**:[3]

A.      **Bankruptcy Petition**.  On July 16, 2023 (the "Petition Date"), each of the Debtors filed with the Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").

---

[3]      This Sale Order shall be deemed to incorporate all findings of fact and conclusions of law made on the record at the hearing for consideration of the entry of the Bidding Procedures Order and the Sale Hearing (as defined herein) pursuant to Bankruptcy Rule 7052, made applicable to the Bankruptcy Cases pursuant to Bankruptcy Rule 9014.  In addition, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate pursuant to Bankruptcy Rule 7052.

B.    On October 26, 2023, Court entered orders converting the Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code, and the Trustee was appointed and currently serves as chapter 7 trustee in the Bankruptcy Cases.

C.    [Omitted].

D.    **Jurisdiction and Venue**.  The Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 1334 and 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

E.    **Final Order**.  This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Time is of the essence in closing the Sale referenced herein, the Trustee and Buyer intend to close the Sale as soon as practicable, and there is no just reason for delay in the implementation of this Sale Order.  Specifically, the Sale must be approved and consummated promptly in order to preserve the Purchased Assets and any remaining viability of the Debtors' business in the hands of Buyer as a going concern, and to maximize the value to the Estates, their creditors, and all other parties in interest.  Accordingly, there is cause to lift the stays contemplated by Rules 6004(h) and 6006(d) of Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and, to any extent necessary, to treat this Sale Order as a final judgment for purposes of Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054.

F.    **Statutory Predicates**.  The statutory predicates for the relief sought in the Motion are sections 105, 363, 365, and 503 of the Bankruptcy Code; Bankruptcy Rules 2002, 6004, 6006, and 9014; and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

G.    **Notice**.  As evidenced by the certifications of service previously filed with the Court and based on the representations of counsel at the Sale Hearing, proper, timely, adequate, and sufficient notice of the Motion, the Auction, the Asset Purchase Agreement, this Sale Order,

4

and the Sale Hearing have been provided in accordance with the Bidding Procedures Order; sections 102(1), 105(a), 363, and 365 of the Bankruptcy Code; Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014; and Local Rules 2002-1, 6004-1, and 9006-1.  Such notice was sufficient under the particular circumstances, and all known creditors of the Estates and other parties in interest in the Bankruptcy Cases were afforded a reasonable opportunity to object and be heard.  No other or further notice of the aforementioned filings and the Sale Hearing was or is necessary or shall be required.

H.      The *Notice of Potential Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with Sale* [D.I. 229] (the "<u>Assumption and Assignment Notice</u>") has been provided to each of the Non-Debtor Counterparties to the contracts identified thereon, including the contracts that are being assumed and assigned to Buyer pursuant to the Asset Purchase Agreement and this Sale Order (the "<u>Assigned Contracts</u>").  Further, the Supplemental Assumption and Assignment Notice (as defined below) has been provided to each of the Non-Debtor Counterparties to the contracts identified thereon as provided in Paragraph 31.  No other or further notice of the Supplemental Assumption and Assignment Notice was or is necessary or shall be required.

I.      [Omitted.]

J.      The disclosures made by the Debtors concerning the Motion, the Asset Purchase Agreement, the Sale, Buyer, and the Sale Hearing were good, complete, and adequate.

K.      **<u>Opportunity to Object</u>**.  A reasonable opportunity to object or be heard regarding the requested relief has been and will be afforded to all creditors of the Estates and other parties in interest in the Bankruptcy Cases, including, without limitation, the following: (i) all persons known or reasonably believed to have asserted an interest in the Assets; (ii) the Non-Debtor Counterparties to the Assigned Contracts; (iii) the Attorneys General in the States where the Assets are located; (iv) the U. S. Trustee; (v) all federal, state, and local taxing authorities in the State(s) where the Business and Assets are located; (vi) all parties that have asserted Liens against the Assets; (vii) all parties included on the consolidated creditor matrix and all parties who have filed

a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002 in the Bankruptcy Cases; and (viii) counsel to the Prepetition Secured Parties and the DIP Secured Parties (as defined in the DIP/Cash Collateral Order).

L.    **Title in the Purchased Assets**.  The Purchased Assets constitute property of the Debtors and their Estates and title thereto is vested in the Debtors and their Estates within the meaning of section 541(a) of the Bankruptcy Code.  The Debtors and the Estates are the sole and lawful owners of the Purchased Assets.

M.    **Extensive Efforts by the Debtors and the Trustee**.  Prior to commencement of the Bankruptcy Cases, the Debtors worked with their counsel and Berkeley Research Group to evaluate options for and guide any potential restructuring, worked with Goldman Sachs & Co. to pursue a sale transaction, and worked with Bank of America to explore options and identify a potential strategic partner for a refinancing transaction.  The Debtors also engaged B. Riley Securities to serve as an investment banker for the Debtors in an in-court proceeding and to implement a process to pursue a transaction or transactions that would allow the Debtors to maximize value of the Purchased Assets.  Following conversion of the Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code, the Trustee re-engaged B. Riley Securities to serve as investment banker for the Trustee and continue working to implement a sale of the Estates' assets. The Sale that is the subject of this Sale Order is the result of the Trustee's extensive efforts seeking to maximize recoveries to the Estates for the benefit of their creditors.

N.    **Business Justification**.  The Trustee has demonstrated a sufficient basis and compelling circumstances to sell the Purchased Assets to Buyer pursuant to the terms and conditions of the Asset Purchase Agreement.  Such action is an appropriate exercise of the Trustee's business judgment and in the best interest of the Debtors, the Estates, and their creditors. Such business reasons include, but are not limited to, the facts that (i) there is substantial risk of further, rapid deterioration of the value of the Purchased Assets if the Sale is not consummated quickly given, among other reasons, that (a) the Bankruptcy Cases have converted to cases under chapter 7 of the Bankruptcy Code and the Debtors no longer operate as going concerns in the

6

Bankruptcy Cases, (b) no authority currently exists to use cash collateral, and (c) one or more "Event of Default" has occurred under the *Final Order (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Secured Parties; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [D.I. 226] (the "DIP/Cash Collateral Order"); (ii) the Successful Bid reflected in the Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets; (iii) the Asset Purchase Agreement and the Closing present the best opportunity to realize the value, and to avoid a decline in value, of the Purchased Assets; and (iv) the Trustee is not operating the Debtors' business and does not have the funding to do so.  Entry of this Sale Order (and all provisions hereof) is a condition precedent to Buyer consummating its obligations under the Asset Purchase Agreement.

O.    **Opportunity to Bid**.  The Trustee and his professionals, and the Debtors and their professionals before the Trustee's appointment, marketed the Purchased Assets appropriately and conducted the marketing and sale process (including the Auction) as set forth in the Motion in good faith without collusion and in accordance with the Bidding Procedures and the Bidding Procedures Order.  The marketing process set forth in the Bidding Procedures and the Bidding Procedures Order was fair in substance and procedure and afforded a full and fair opportunity for any party to make a higher or otherwise better offer to purchase the Purchased Assets.  Based upon the record of these proceedings, all creditors of the Debtors and their Estates, other parties in interest in the Bankruptcy Cases, and all prospective bidders have been afforded a reasonable and fair opportunity to bid for the Purchased Assets.

P.    **Auction**.  The Trustee, in the exercise of his reasonable discretion, and in consultation with the Consultation Parties, conducted an auction that concluded on January 16, 2024, with the Purchased Assets being purchased by Buyer under the Asset Purchase Agreement. The Auction complied in all respects with the Bidding Procedures and Bidding Procedures Order.

Q.     **Highest or Otherwise Best Offer**.  The total consideration provided by Buyer for the Purchased Assets is the highest and otherwise best offer for the Purchased Assets received by the Trustee.  At the conclusion of the Auction, the Trustee, in exercising his reasonable discretion, following consultation with the Consultation Parties, determined that Buyer submitted the highest or otherwise best offer for the Purchased Assets identified in the Asset Purchase Agreement, and that Elekta Limited submitted the second-highest or otherwise best offer for such respective assets. Thus, the Trustee (i) declared Buyer the Successful Bidder for the Purchased Assets set forth in the Asset Purchase Agreement in accordance with the Bidding Procedures, the Bidding Procedures Order, and the Asset Purchase Agreement, and (ii) designated Elekta Limited as the Next-Highest Bidder, which determination as to both the Successful Bidder and the Next-Highest Bidder constitutes the valid and sound exercise of the Trustee's business judgment.  The Trustee, Buyer, the Next-Highest Bidder, and their respective agents and representatives have complied in all respects with the Bidding Procedures and Bidding Procedures Order.

R.     **Good Faith Purchaser**.  The Asset Purchase Agreement and the Sale have been negotiated by the Trustee and Buyer, and their respective agents and representatives, in good faith, at arms' length, and without collusion or fraud.  The terms and conditions of the Asset Purchase Agreement, including the consideration to be paid by Buyer to the Trustee pursuant to the Asset Purchase Agreement for the Purchased Assets identified in such agreement, are fair and reasonable, and the Sale, including each part thereof with respect to Buyer, is in the best interest of the Trustee, the Debtors, their Estates, and their creditors.

S.     Buyer is a "good faith purchaser" entitled to the full benefits and protections of section 363(m) of the Bankruptcy Code and any other applicable bankruptcy or non-bankruptcy law with respect to the sale and assignment of the Purchased Assets that Buyer is acquiring pursuant to the Asset Purchase Agreement.

T.     The Asset Purchase Agreement was not controlled by an agreement between or among potential or actual bidders within the meaning of section 363(n) of the Bankruptcy Code. The Trustee and Buyer have not engaged in any conduct that would cause or permit the Asset

Purchase Agreement to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code. Buyer is entitled to all the protections and immunities of section 363(n) of the Bankruptcy Code. Buyer is not an "affiliate" or "insider" of the Debtors as defined in section 101 of the Bankruptcy Code.

U.      A prohibition against creditors of the Debtors and their Estates and third parties pursuing Encumbrances and Excluded Liabilities against Buyer is necessary to induce Buyer to close the Sale and is, therefore, necessary to avoid irreparable injury to the Estates, and will benefit all creditors of the Debtors and their Estates.

V.      Buyer has acted in good faith in its negotiations with the Trustee, submitting a bid, and participating in the Auction.

W.      **Power and Authority**. Subject to the entry of this Sale Order, the Trustee has full power and authority to execute and deliver the Asset Purchase Agreement and to perform all of his obligations thereunder, and the sale of the Purchased Assets have been duly and validly authorized by all corporate authority necessary to consummate the Sale. No consents or approvals, other than as expressly provided for in the Asset Purchase Agreement, and the entry of this Sale Order, are required by the Trustee to consummate the Sale.

X.      **Transfer and Sale of Assumed Liabilities; Assumption and Assignment in Best Interest**. On December 22, 2023, the Trustee timely filed the *Trustee's Motion for Order Extending Time to Assume or Reject Executory Contracts* [D.I. 496] (the "Contract Extension Motion"), requesting an extension of the time by which the Trustee must decide to assume or reject executory contracts under section 365(d)(1) of the Bankruptcy Code from December 16, 2023, through and including March 25, 2024. Notice of the Contract Extension Motion was given as set forth in the Contract Extension Motion, was adequate, and no further notice of the Contract Extension Motion need be given. The hearing on the Contract Extension Motion has been continued to February 12, 2024 at 10:00 a.m. (ET). To the extent any objections or reservations of rights to the Contract Extension Motion were settled on the record of the January 18, 2024 hearing or by stipulation, such objections are hereby resolved with no further action needed by the

Debtors or the objecting non-debtor party.  Subject to Paragraph 31, the transfer and sale of the Assumed Liabilities pursuant to the terms of the Asset Purchase Agreement and this Sale Order and the assumption of the Assigned Contracts by the Trustee and the assignment thereof to Buyer, as applicable, pursuant to the terms of the Asset Purchase Agreement and this Sale Order are integral to the Asset Purchase Agreement and in the best interest of the Debtors, their Estates and their creditors, and represent the reasonable exercise of sound and prudent business judgment by the Trustee.  Accordingly, such transfer and sale to Buyer and the assumption and assignment are reasonable, enhance the value of the Estates, and do not constitute unfair discrimination.  As among the Trustee and Buyer, nothing in this Sale Order shall enlarge or restrict any obligations of the Trustee or Buyer under the Asset Purchase Agreement with respect to the Assumed Liabilities or the Assigned Contracts.  No provision of any Assigned Contract that purports to prohibit, restrict, or condition the assignment of any such Assigned Contract in connection with the Sale shall have any force or effect to the extent provided in section 365 of the Bankruptcy Code.

Y.      **Cure/Adequate Assurance**.  This entire paragraph is subject to Paragraph 31.  The Debtors and the Trustee have met all of the requirements of section 365(b) of the Bankruptcy Code for each of the Assigned Contracts.  The Debtors and the Trustee have provided (i) adequate assurance of cure of any default existing prior to the Closing Date under any of the Assigned Contracts within the meaning of section 365(b)(1)(A) of the Bankruptcy Code and (ii) adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from such default under any of the Assigned Contracts within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.  Pursuant to the provisions of the Asset Purchase Agreement, Buyer is obligated to pay any and all Cure Costs with respect to the Assigned Contracts in cash on the Assignment Effective Date in the amount specified on the Supplemental Assumption and Assignment Notice as of the Closing Date (or, with respect to any additional Contracts, as may otherwise be fixed by the Court), or as otherwise ordered by the Court.  Notwithstanding anything to the contrary, the Estates shall not be responsible for the payment of any Cure Costs and Buyer's payment of any Cure Costs shall not (i) be deemed a purchase price adjustment that reduces the

overall consideration received by the Estates, or (ii) reduce the amount of the cash and contingent consideration, if any, that is otherwise payable by Buyer under the Asset Purchase Agreement. Buyer has provided adequate assurance of its future performance of and under the Assigned Contracts, within the meaning of sections 365(b)(1)(C) and 365(b)(3) (to the extent applicable) of the Bankruptcy Code.   The Non-Debtor Counterparties were each given, and will be given, adequate notice and the opportunity to object to the Assumption and Assignment Notice and Supplemental Assumption and Assignment Notice and are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code; any such objection filed by a Non-Debtor Counterparty that has not been withdrawn is hereby overruled.

Z.      **Free and Clear**.  Buyer would not have entered into the Asset Purchase Agreement to acquire the Purchased Assets, and would exercise its right to terminate the Asset Purchase Agreement, if the sale of the Purchased Assets were to be transferred to it other than free and clear of all Encumbrances (other than Permitted Encumbrances as applicable)[4] and Excluded Liabilities, or Buyer would, or in the future could, be liable for any such Encumbrances and Excluded Liabilities.  A sale of the Purchased Assets other than one free and clear of all Encumbrances and Excluded Liabilities would adversely impact the Estates and would yield substantially less value for the Estates, with less certainty than the Sale.   Therefore, the Sale contemplated in the Asset Purchase Agreement is in the best interests of the Debtors, their Estates, their creditors, and all other parties in interest.

AA.      **Satisfaction of 363(f) Standards**.  The Trustee may sell and assign the Purchased Assets free and clear of all Encumbrances and Excluded Liabilities, as applicable, because, with respect to each creditor asserting an Encumbrance and Excluded Liability, one or more of the standards set forth in sections 363(f)(1)–(5) of the Bankruptcy Code have been satisfied.  Those holders of Encumbrances and Excluded Liabilities who did not object or who withdrew their objections to this Sale Order are deemed to have consented to the Motion and the sale and

---

[4]   Each subsequent mention of Encumbrances in this Sale Order shall exclude Permitted Encumbrances as applicable.

assignment of the Purchased Assets to Buyer pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Encumbrances or Excluded Liabilities who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Encumbrances or Excluded Liabilities, if any, attach to the proceeds of the Sale ultimately attributable to the Purchased Assets in which such holders allege an Encumbrance or Excluded Liability in the same order of priority, with the same validity, force and effect that such holder had prior to such Sale, and subject to any claims and defenses the Debtors and their estates may possess with respect thereto.  Without limiting the generality of the foregoing, as adequate protection for the free and clear sale of inventory as to which Scan Global Logistics ("Scan Global") asserts a lien pursuant to section 363(f) of the Bankruptcy Code, Scan Global shall have a lien on the proceeds of the Sale related to such assets in the same order of priority, with the same validity, force, and effect that such lien, if any, had prior to the Sale, and the rights of the Trustee and all other parties in interest to oppose, and object to, or seek to avoid Scan Global's assertion of any such liens, claims, rights or remedies, if any, and to seek any related relief, are preserved and reserved.  The Trustee will not distribute any of the sale proceeds unless agreed to by the Trustee, Scan Global and the Prepetition Secured Lenders, or until further order of this Court.

BB.  **No Successor Liability**.  The transactions contemplated under the Asset Purchase Agreement do not amount to a consolidation, merger, or *de facto* merger of Buyer with the Debtors or the Debtors' Estates, there is not substantial continuity between the Debtors, their Estates, and Buyer, there is no common identity between the Debtors, their Estates, and Buyer, there is no continuity of enterprise between the Debtors, their Estates, and Buyer, Buyer is not a mere continuation of the Debtors or their Estates, and Buyer does not constitute a successor to the Debtors or their Estates in any way.  Buyer would not have acquired the Purchased Assets but for the foregoing protections against potential claims based upon "successor liability" or similar theories.

CC.  **No Fraudulent Transfer**.  The Sale is not for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any

state, territory, or possession or the District of Columbia. Neither the Trustee nor Buyer has entered into the Asset Purchase Agreement or is consummating the Sale with any fraudulent or otherwise improper purpose.

DD.   **Fair Consideration**.  The consideration to be provided by Buyer for the Purchased Assets as indicated in its Asset Purchase Agreement constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, section 548 of the Bankruptcy Code, or any similar state or federal law, as applicable), and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, or possession or the District of Columbia.

EE.   **Compliance with Bankruptcy Code**.  The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including without limitation sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been or will be complied with in respect to the Sale as of the Closing Date.

FF.   **[Omitted]**

GG.   **DIP Financing/Cash Collateral**.  As a condition of the consent of the DIP Secured Parties and Prepetition Secured Parties to the transactions contemplated herein and pursuant to the DIP/Cash Collateral Order, until the DIP Obligations, Prepetition Secured Obligations, and the Adequate Protection Amount (each as defined in the DIP/Cash Collateral Order) have been satisfied in full in accordance with the DIP Documents and the Prepetition Loan Documents (each as defined in the DIP/Cash Collateral Order), all proceeds from the Sale or other disposition of, or other revenue of any kind attributable to, any DIP Collateral, Prepetition Collateral, or Adequate Protection Collateral (each as defined in the DIP/Cash Collateral Order) that shall come into the possession or control of any Debtor, their Estates, or the Trustee shall be subject to the DIP Liens, Prepetition Liens, and Adequate Protection Liens (each as defined in the DIP/Cash Collateral Order), as applicable.

HH.     The Sale contemplated by the Asset Purchase Agreement is in the best interest of the Debtors, their Estates, their creditors, interest holders, and all other parties in interest in the Bankruptcy Cases; and it is therefore,

**ORDERED, ADJUDGED AND DECREED THAT**:

1.      **Relief Granted**.  The relief requested in the Motion is hereby granted in its entirety.

2.      **Objections Overruled**.  All objections and responses to the Motion, the Auction, the Sale, this Sale Order, or the relief granted herein (including all reservations of rights included therein) that have not been overruled, withdrawn, waived, settled on the record of the January 18, 2024 hearing or by stipulation, or otherwise resolved, are hereby overruled and denied on the merits with prejudice, provided however that any objections to the Supplemental Assumption and Assignment Notice are reserved in accordance with Paragraph 31.

3.      **Notice**.  Notice of the Motion and the assumption and assignment of the Assigned Contracts (including proposed Cure Costs related thereto), the Auction, the Sale Hearing, and the Sale was and will be fair and equitable under the circumstances and complied, and complies, in all respects with the Bidding Procedures; sections 102(1), 105(a), 363, and 365 of the Bankruptcy Code; Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014; and Local Rules 2002-1, 6004-1, and 9006-1.

4.      **Prior Findings of Fact and Conclusions of Law**.  The Court's findings of fact and conclusions of law in the Bidding Procedures Order are incorporated herein by reference.

5.      **Approval**.  The Asset Purchase Agreement and all ancillary documents related thereto are hereby approved and authorized in all respects and shall be deemed in full force and effect, and the Trustee and Buyer are hereby authorized and empowered, and in the case of the Trustee, directed, to fully perform under, consummate, and implement the terms of the Asset Purchase Agreement and to execute, deliver, and perform under, any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of Asset Purchase Agreement and this Sale Order, including, without limitation, deeds, assignments, patents, stock powers, transfers of membership interests, and other instruments of

transfer, and to take all further actions as may reasonably be requested by the Trustee or Buyer for the purpose of assigning, transferring, granting, conveying, and conferring to Buyer or reducing to possession any or all of the Purchased Assets, as may be necessary or appropriate to the performance of the Trustee's obligations as contemplated by the Asset Purchase Agreement, without any further corporate action or orders of the Court. Notwithstanding anything set forth in this Sale Order to the contrary, all rights, duties and obligations of Buyer may be assigned to a designee (including an Affiliate) of Buyer in accordance with the Asset Purchase Agreement, *provided* that Buyer is, and shall remain, primarily and irrevocably responsible for the full performance of Buyer's duties and obligations under the Asset Purchase Agreement notwithstanding any such designation or the terms thereof.

6.    **Good Faith**.  Buyer is a good faith purchaser of the Purchased Assets set forth in the Asset Purchase Agreement and is hereby granted and entitled to all of the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code.  Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Sale Order are hereafter reversed, modified, or vacated by a subsequent order of the Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any sale, transfer, or assignment under the Asset Purchase Agreement or obligation or right granted pursuant to the terms of this Sale Order (unless stayed pending appeal prior to the Closing Date), and notwithstanding any reversal, modification, or vacatur, any sale, transfer, or assignment shall be governed in all respects by the original provisions of this Sale Order and the Asset Purchase Agreement, as the case may be.

7.    **Section 363(n) of the Bankruptcy Code**.  The Sale approved by this Sale Order is not subject to avoidance or any recovery or damages pursuant to section 363(n) or any other section of the Bankruptcy Code.

8.    **Documentation**.  The Trustee is authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units, any and all certificates, agreements, or amendments necessary or appropriate to effectuate

15

the Sale contemplated by the Asset Purchase Agreement, any related agreements and this Sale Order, including amended and restated certificates or articles of incorporation, by-laws, or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as the Trustee may determine are necessary or appropriate, and all such officials are hereby authorized to accept the foregoing. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.

9. **Cooperation**. The Trustee is hereby authorized to take all actions and execute all documents that Buyer reasonably and in good faith determines is necessary or desirable to ensure that the Sale related to Buyer is consummated in accordance with the Asset Purchase Agreement, and the Trustee is authorized to make such modifications or supplements reasonably acceptable to the Trustee and Buyer to any bill of sale or other document or instrument executed or to be executed in connection with the Closing to Buyer to facilitate such consummation as contemplated by the Asset Purchase Agreement.

10. **Valid Transfer**. Effective as of the Closing of the Sale, subject to Paragraph 31, and with respect to the Sale, (i) the sale and assignment of the Purchased Assets and the Assigned Contracts, as applicable, by the Trustee to Buyer pursuant to the terms of the Asset Purchase Agreement shall constitute a legal, valid, and effective transfer of the Purchased Assets and the Assigned Contracts, as applicable, notwithstanding any requirement for approval or consent by any person, and shall vest Buyer with all right, title, and interest of the Trustee, the Debtors, and their Estates in and to the Purchased Assets and Assigned Contracts, free and clear of all Encumbrances and Excluded Liabilities, as applicable, pursuant to section 363(f) of the Bankruptcy Code, and (ii) the assumption of the Assigned Contracts and all Assumed Liabilities by Buyer constitutes a legal, valid, and effective assignment and delegation of any and all obligations, liabilities, and claims in respect thereof to Buyer and, other than to the extent expressly provided in this Sale Order or constituting Excluded Liabilities under the Asset Purchase

Agreement, as applicable, divests the Trustee, the Debtors, and their Estates of all right, title and interest in, and all obligations and liability with respect to, the Assigned Contracts and such Assumed Liabilities. Upon the occurrence of the Closing and subject to Paragraph 31, this Sale Order shall be considered and constitute, for any and all purposes, a full and complete general assignment, conveyance, and transfer of the Purchased Assets (including the Assigned Contracts, as applicable) to Buyer pursuant to the Asset Purchase Agreement or a bill of sale or assignment transferring indefeasible right, title and interest in the Purchased Assets set forth in the Asset Purchase Agreement, including the Assigned Contracts, as applicable, and all other rights and interests associated with or appurtenant to the Purchased Assets, including, without limitation, warranty rights, intellectual property rights (including, without limitation, rights to all associated patents, regulatory approvals, permits, and registrations) and other non-executory contract rights, to Buyer all to the extent set forth in the Asset Purchase Agreement.

11. **Free and Clear**. Except to the extent specifically provided in the Asset Purchase Agreement or this Sale Order, upon the occurrence of the Closing under the Asset Purchase Agreement, the Trustee shall be, and hereby is, authorized and empowered, pursuant to sections 105, 363(b) and 363(f) of the Bankruptcy Code, to sell, assign, convey, and transfer the Purchased Assets under the Asset Purchase Agreement to Buyer and assign the Assigned Contracts to Buyer, as applicable. Except to the extent specifically provided in the Asset Purchase Agreement or this Sale Order, the sale and assignment of the Purchased Assets and the assignment of the Assigned Contracts, as applicable, to Buyer pursuant to the Asset Purchase Agreement vests Buyer with all right, title and interest of the Trustee, the Debtors, and their Estates in and to its Purchased Assets, free and clear of any and all Encumbrances and Excluded Liabilities, as applicable, and other liabilities of any kind or nature whatsoever (except for Assumed Liabilities, as applicable), whether known or unknown as of the Closing Date, now existing or hereafter arising, legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, whether imposed by agreement, understanding, law, equity, or otherwise, with all such Encumbrances (including the DIP Liens, Prepetition Liens, and Adequate Protection Liens (all as defined in the DIP/Cash

Collateral Order)) and Excluded Liabilities, as applicable, to attach only to the proceeds of the sale and assignment of the Purchased Assets with the same priority, validity, force, and effect as they now have in or against the Purchased Assets. The Motion shall be deemed to have provided sufficient notice as to the sale and assignment of the Purchased Assets free and clear of all Encumbrances and Excluded Liabilities in accordance with the Bidding Procedures Order; sections 102(1), 105(a), 363, and 365 of the Bankruptcy Code; Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014; and Local Rules 2002-1, 6004-1, and 9006-1. Following the Closing, no holder of any Encumbrance on any of the Purchased Assets subject to such Closing may interfere with Buyer's enjoyment of the Purchased Assets, as applicable, based on or related to such Encumbrance, or any actions that the Debtors or the Trustee may take or fail to take in the Bankruptcy Cases and no interested party may take any action to prevent, interfere with, or otherwise enjoin consummation of the Sale. The following resolutions were agreed to and are incorporated herein:

    a. Without limiting the generality of the foregoing, as adequate protection for the free and clear sale of inventory as to which Scan Global Logistics ("Scan Global") asserts a lien pursuant to section 363(f) of the Bankruptcy Code, Scan Global shall have a lien on the proceeds of the Sale related to such assets in the same order of priority, with the same validity, force, and effect that such lien, if any, had prior to the Sale, and the rights of the Trustee and all other parties in interest to oppose, and object to, or seek to avoid Scan Global's assertion of any such liens, claims, rights or remedies, if any, and to seek any related relief, are preserved and reserved. The Trustee will not distribute any of the sale proceeds unless agreed to by the Trustee, Scan Global and the Prepetition Secured Lenders, or until further order of this Court;

    b. Notwithstanding anything to the contrary in the Asset Purchase Agreement or this Sale Order (including any relief under section 363(f) of the Bankruptcy Code, if contrary), nothing in connection with the Sale shall

prejudice any rights that Chindex Shanghai International Trading Company Limited and certain of its affiliates, including Shanghai Fosun Pharmaceutical (Group) Co., Ltd. ("Fosun") may have against any person or entity with respect to the Sale or any rejection by the Trustee of Fosun's Distribution Agreement (including any rejection of any other agreements that Fosun may have with a Debtor), including under sections 365(n), 365(g), and 363(e) of the Bankruptcy Code, and including any rights surviving such Sale or any such rejection under, in connection with, or otherwise arising out of any licenses to, interests in, or rights to (as they existed as of the Petition Date) associated intellectual property.  For the avoidance of doubt, nothing in this Paragraph 11(b) shall broaden or create new licenses, rights, or interests that Fosun does not already have under the Bankruptcy Code or any other applicable law as of the Petition Date; and

c.  Notwithstanding anything to the contrary in the Asset Purchase Agreement or this Sale Order (including any relief under section 363(f) of the Bankruptcy Code, if contrary), nothing in connection with the Sale shall prejudice any rights that Cowealth Medical China Co., Ltd. and its affiliate, Royal Seal Holding Co., Limited ("Cowealth") may have against any person or entity with respect to the Sale or any rejection by the Trustee of Cowealth's Distribution Agreement (including any rejection of any other agreements that Cowealth may have with a Debtor), including under sections 365(n), 365(g), and 363(e) of the Bankruptcy Code, and including any rights surviving such Sale or any such rejection under, in connection with, or otherwise arising out of any licenses to, interests in, or rights to (as they existed as of the Petition Date) associated intellectual property.  For the avoidance of doubt, nothing in this Paragraph 11(c) shall broaden or create new licenses, rights, or interests that Cowealth does not already have

under the Bankruptcy Code or any other applicable law as of the Petition Date.

12.    The term "<u>Encumbrance</u>" as used in this Sale Order means any charge, claim (as defined in section 101(5) of the Bankruptcy Code), community property interest, pledge, condition, equitable interest, lien (statutory or other), option, security interest, mortgage, easement, encroachment, encumbrance, right of way, right of first refusal, other interest of any kind, or restriction of any kind, including any restriction on use, voting, transfer, receipt of income or exercise of any other attribute of ownership of property, whether choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, in respect of the Debtors or any property of the Debtors, the Estates, any property of the Estates, the Trustee (in his capacity as Trustee), or any property of the Trustee (in his capacity as Trustee).  Notwithstanding the foregoing or any other provision of this Sale Order or the Asset Purchase Agreement to the contrary, the transfer of the Purchased Assets to Buyer shall not be free and clear of recoupment or any affirmative defense that any party has or may have that has been or could have been asserted against the Trustee, the Debtors, or their Estates with respect to the Purchased Assets.

13.    The provisions of this Sale Order authorizing the sale and assignment of the Purchased Assets free and clear of Encumbrance and Excluded Liabilities, as applicable, shall be self-executing, and none of the Trustee, Debtors, and Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.

14.    With regard to the forms of, timing, and other terms concerning the consideration to be provided by Buyer to the Trustee as set forth in the Asset Purchase Agreement, Buyer is directed to comply with its respective obligations thereunder, and the Trustee and his successors and assigns, are hereby authorized to enforce all such provisions.  As further set forth in Paragraph 45 hereof, the Court shall retain exclusive jurisdiction with regard to any and all issues, disputes,

controversies, causes of action, and claims with regard to, or arising under, such provisions, including, without limitation, the enforcement thereof.

15. **Books and Records.** Notwithstanding anything to the contrary in the Asset Purchase Agreement regarding post-closing access to books and records, in lieu of direct login provided to the Trustee or his professionals or representatives, Buyer will provide Trustee with information upon reasonable request from the Debtors' books and records that are transferred at closing to allow the Trustee to complete administration of the Estates.

16. <u>**Authorization to Creditors**</u>. On and after the Closing Date, each of the Estates' applicable creditors are authorized to execute such documents and take all other actions as may be reasonably necessary to release its Encumbrances, if any, in the Purchased Assets subject to such Sale, as such Encumbrances may otherwise exist. If any person or entity that has filed financing statements, mortgages, mechanics liens, *lis pendens*, or other documents, instruments, notices or agreements evidencing any Lien against or in the Purchased Assets shall not have delivered to the Trustee before such Closing, in proper form for filing and executed by the appropriate parties, termination statements, releases or instruments of satisfaction that the person or entity has with respect to the Purchased Assets subject to such Sale, then with regard to the Purchased Assets, (i) each of the Trustee and Buyer is authorized to execute and file such termination statements, releases, instruments of satisfaction or other documents on behalf of the person or entity with respect to the Purchased Assets and (ii) each of the Trustee and Buyer, as applicable, is authorized to file, register or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens against the Purchased Assets.

17. <u>**Authorization to Government Agencies**</u>. Each and every Governmental Authority, filing agent, filing officer, title agent, recording agency, governmental department, secretary of state, federal, state, and local official, and any other persons and entity who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or

insure any title in or to the Purchased Assets, is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Sale contemplated by the Asset Purchase Agreement or this Sale Order.  All such entities described above in this paragraph are authorized to strike all recorded Liens against the Purchased Assets from their records, official and otherwise.

18.    **Direction to Surrender Possession or Control**.    All persons or entities in possession or control of any of the Purchased Assets are directed to surrender possession or control of such Purchased Assets to Buyer on the Closing Date of the Sale or at such time thereafter as Buyer may request.

19.    **Licenses and Permits**.  To the extent provided in the Asset Purchase Agreement and available under applicable law, Buyer shall be authorized, as of the applicable Closing Date, to operate under any Governmental Authorization, rights granted in respect of Intellectual Property Assignment Agreements, if any, or other Intellectual Property, constituting part of the Purchased Assets, any other license, permit, registration, and any other governmental approval of the Debtors or the Trustee with respect to the Purchased Assets and the Assigned Contracts, as applicable, and all such licenses, permits, registrations, and Governmental Authorizations, Intellectual Property, and any other approvals are deemed to have been, and hereby are, directed to be transferred to Buyer as of the Closing Date.  To the extent any license or permit necessary for the operation of the business of the Debtors is determined not to be an executory contract assumable and assignable under section 365 of the Bankruptcy Code, Buyer shall apply for and obtain any necessary license or permit promptly after the Closing Date.

20.    To the fullest extent provided by section 525 of the Bankruptcy Code, Governmental Authorities are prohibited from revoking or suspending any Governmental Authorization or other approval, permit or license relating to the operation of the Purchased Assets sold, transferred, or conveyed to Buyer on account of the filing or pendency of the Bankruptcy Cases, the consummation of the Sale, or the Debtors' or Trustee's non-payment of any debt.

21.    **No Successor Liability**.  Buyer and its affiliates, predecessors, successors, assigns, members, partners, directors, officers, principals and shareholders (or equivalent) are not and shall not be (i) deemed a "successor" in any respect to the Debtors, their Estates, or the Trustee as a result of the consummation of the Sale contemplated by the Asset Purchase Agreement (other than with respect to Assumed Liabilities assumed by Buyer under the Asset Purchase Agreement) or any other event occurring in the Bankruptcy Cases under any theory of law or equity, (ii) deemed to have, *de facto* or otherwise, merged, or consolidated with or into the Debtors or their Estates, (iii) deemed to have a common identity with the Debtors, their Estates, or the Trustee, (iv) deemed to have a continuity of enterprise with the Debtors, their Estates, or the Trustee, or (v) deemed to be a continuation or substantial continuation of the Debtors, their Estates, or the Trustee, or any enterprise of the Debtors, their Estates, or the Trustee.  Except for the Assumed Liabilities, as applicable, or as otherwise expressly provided in this Sale Order or the Asset Purchase Agreement, the transfer of the Purchased Assets and the Assigned Contracts, as applicable, to Buyer pursuant to the Asset Purchase Agreement shall not result in Buyer or its affiliates, predecessors, successors, assigns, members, partners, directors, officers, or principals and shareholders (or equivalent) (i) having any liability or responsibility for any claim against the Debtors, their Estates, or the Trustee or against an insider of the Debtors, their Estates, or the Trustee (including, without limitation, for any Excluded Liabilities, as applicable), (ii) having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Encumbrance or Excluded Liability, as applicable, or (iii) having any liability or responsibility to the Debtors, their Estates, or the Trustee, except as is expressly set forth in the Asset Purchase Agreement or this Sale Order.  Buyer shall not assume, be deemed to assume, or in any other way be responsible for any liability or obligation described in the foregoing sentence (other than with respect to Assumed Liabilities, as applicable), and the Motion shall be deemed to have provided sufficient notice as to the Sale and assignment of the applicable Purchased Assets free and clear of all such liabilities and obligations in accordance with the Bidding Procedures Order; sections 102(1), 105(a), 363, and 365 of the Bankruptcy Code;

Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014; and Local Rules 2002-1, 6004-1, and 9006-1.

22. **Prohibition of Actions Against Buyer**.  Subject to Paragraph 37 hereof, and except to the extent expressly included in the Assumed Liabilities, as applicable, all persons and entities, including, but not limited to, the Trustee, the Debtors, employees, former employees, all debt security holders, equity holders, licensors, administrative agencies, governmental units (as defined in section 101(27) of the Bankruptcy Code), tax and regulatory authorities, secretaries of state, federal, state, and local officials, lenders, contract parties, bidders, lessors, other parties in possession of any of the Purchased Assets at any time, trade creditors and all other creditors holding any Encumbrances or Excluded Liabilities of any kind or nature whatsoever against or in the Trustee, Debtors, their Estates, or in the Trustee's, Debtors' or their Estates' interests in the Purchased Assets (whether known or unknown as of the Closing Date, now existing or hereafter arising, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, whether imposed by agreement, understanding, law, equity, or otherwise), arising under or out of, in connection with, or in any way relating to, the Trustee, the Debtors, their Estates, the Purchased Assets, the Assigned Contracts, the operation of the Debtors' business, on or prior to the Closing Date, the Sale (other than Buyer's obligations under this Sale Order and the Asset Purchase Agreement, and all other ancillary agreements, documents or instruments entered into in connection with the Asset Purchase Agreement), or the transfer of the Purchased Assets or the Assigned Contracts, as applicable, to Buyer shall be and hereby are forever barred, estopped, and permanently enjoined from asserting, prosecuting, commencing, continuing, or otherwise pursuing in any manner any action, claim or other proceeding of any kind, directly or indirectly, against Buyer or any of their respective affiliates, predecessors, successors, or assigns or any of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, principals, affiliates, shareholders (or equivalent), financial advisors and representatives (each of the foregoing in its individual capacity), their property or the applicable Purchased Assets.  In connection with the foregoing, actions that are barred hereby

24

include, without limitation: (i) the commencement or continuation of any action or other proceeding, (ii) the enforcement, attachment, collection, or recovery of any judgment, award, decree or order, (iii) the creation, perfection, or enforcement of any Encumbrance, (iv) the assertion of any right of setoff (other than rights of setoff that were asserted prior to the Petition Date), subrogation, reversion, assignment or specific performance of any kind, (v) the commencement or continuation of any action that does not comply with, or is inconsistent with, the provisions of this Sale Order, any actions contemplated or taken in respect hereof, or the Asset Purchase Agreement, and (vi) the revocation, termination or failure or refusal to renew any Governmental Authorization or other license, permit, registration, or governmental authorization or approval to operate any of the Purchased Assets or conduct the businesses associated with the Purchased Assets.  Following the Closing Date, no Person that was the holder of an Encumbrance on, in or against any of Purchased Assets prior to the Closing Date shall interfere with Buyer's title to, license of, or use and enjoyment of the Purchased Assets based on or related to such Encumbrance, or any actions that the Debtors or the Trustee may take or have taken in the Bankruptcy Cases.

23.    **No Bulk Sales; No Brokers**.  No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale or the other transactions contemplated by the Asset Purchase Agreement or this Sale Order.  Buyer is not and will not become obligated to pay any fee or commission or like payment to any broker, finder, or financial advisor as a result of the consummation of the Sale or the other transactions based upon any arrangement made by or on behalf of the Debtors or the Trustee.

24.    **Fees and Expenses; Indemnity**.  Any amounts payable or otherwise reimbursable by the Trustee under the Asset Purchase Agreement or any of the documents delivered by the Trustee in connection with the Asset Purchase Agreement, including without limitation (i) any allowed claims for breach thereof, (ii) any amounts relating to the indemnity provided by the Debtors under the Asset Purchase Agreement, if any, and (iii) any purchase price or other adjustments, shall be paid under the terms of and in the manner provided in the Asset Purchase Agreement without further order of the Court, as an allowed administrative claim in an amount

equal to such payment in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code, and shall not be discharged, modified, or otherwise affected by any reorganization plan for the Debtors, or otherwise, except by written agreement with Buyer or its successors or assigns (such agreement to be provided in Buyer's or its successor's or assign's respective sole discretion).

25.    **Assumption and Assignment of Assigned Contracts**. Under sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing and subject to Paragraph 31, the Debtors' and the Trustee's assumption of the Assigned Contracts and assignment thereof to Buyer, free and clear of all Encumbrances (other than Assumed Liabilities) and Excluded Liabilities pursuant to the terms set forth in the Asset Purchase Agreement is hereby approved, and the requirements of sections 365(b)(1) and 365(f)(2) (including section 365(b)(3) to the extent applicable) of the Bankruptcy Code with respect thereto are hereby deemed satisfied. Subject to Paragraph 31, each of the Non-Debtor Counterparties is hereby forever barred, estopped, and permanently enjoined from raising or asserting against the Trustee, the Debtors, their Estates, or the property of any of such parties, any assignment fee, default, breach, claim, pecuniary loss, liability, or obligation (whether known or unknown as of the Closing Date, now existing or hereafter arising, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, whether imposed by agreement, understanding, law, equity, or otherwise) arising under or out of, in connection with, or in any way related to the Assigned Contracts existing as of the Closing Date or arising by reason of the assumption or assignment of such Assigned Contracts or the Closing, except to the extent constituting an Excluded Liability under the Asset Purchase Agreement. Notwithstanding the foregoing, pursuant to the terms of the Asset Purchase Agreement and section 365(k) of the Bankruptcy Code, as applicable, Buyer shall be liable for all obligations and liabilities arising after and relating to the period following the Closing Date under the Assigned Contracts, all of which shall constitute Assumed Liabilities, and the Trustee, the Debtors, and their Estates shall not be liable for any such obligations or liabilities.

26.     Each of the Assigned Contracts shall be deemed to be valid and binding and in full force and effect and enforceable in accordance with its terms as of the date of this Sale Order, subject to any amendments or modifications agreed to between a Non-Debtor Counterparty and Buyer.  Upon Closing (or, with respect to a Disputed Contract (as defined below), the date on which such Disputed Contract becomes an Assigned Contract), in accordance with sections 363 and 365 of the Bankruptcy Code, Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtors under the applicable Assigned Contracts.  The assignment of each of the Assigned Contracts is deemed to be made in good faith under, and is entitled to the protections of, section 363(m) of the Bankruptcy Code.

27.     **Adequate Assurance**.  Subject to Paragraph 31, Buyer has provided adequate assurance of its future performance under the relevant Assigned Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code (including section 365(b)(3) to the extent applicable).  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to Buyer of the Assigned Contracts have been satisfied.

28.     **Anti-Assignment Provisions Unenforceable**.  No sections or provisions of the Assigned Contracts that purport to (i) prohibit, restrict, or condition the Trustee's assignment of the Assigned Contracts, including, but not limited to, the conditioning of such assignment on the consent of the Non-Debtor Counterparties; (ii) authorize the termination, cancellation, or modification of the Assigned Contracts based on the filing of a bankruptcy case, the financial condition of the Debtors or similar circumstances; (iii) declare a breach or default as a result of a change in control in respect of the Debtors; or (iv) provide for additional payments, penalties, conditions, renewals, extensions, charges, other financial accommodations in favor of the Non-Debtor Counterparties to the Assigned Contracts, or modification of any term or condition upon the assignment of an Assigned Contract or the occurrence of the conditions set forth in subsection (ii) above, shall have any force and effect, and such provisions constitute unenforceable anti-assignment provisions to the extent provided under section 365(f) of the Bankruptcy Code or are

otherwise unenforceable to the extent provided under section 365(e) of the Bankruptcy Code. Subject to Paragraph 31, the entry of this Sale Order constitutes the consent of the Non-Debtor Counterparties who did not object to the assumption and assignment of such agreements without the necessity of obtaining such party's consent, written or otherwise, to such assumption or assignment. All Assigned Contracts shall remain in full force and effect, without existing default(s), subject only to payment of the applicable Cure Costs in accordance with the Asset Purchase Agreement, and to any amendments or modifications agreed to between a Non-Debtor Counterparty and Buyer.

29.     **No Fees for Assumption and Assignment**. Other than Assumed Liabilities, there shall be no rent accelerations, penalties, assignment fees, increases or any other fees charged to Buyer, its successors or assigns, or the Trustee, the Debtors, or their Estates as a result of the assumption and assignment of the Assigned Contracts.

30.     **Cure Costs**. Subject to Paragraph 31, payment of the Cure Costs by Buyer as set forth on the Contract & Cure Schedule (or such other amount or such other terms as may be agreed to by Buyer and the Non-Debtor Counterparties to the applicable Assigned Contract) in accordance with the Asset Purchase Agreement is hereby authorized and directed. All defaults or other obligations shall be deemed cured and shall no longer exist upon the payment or other satisfaction by the Trustee or the Buyer of such Cure Costs and, for the avoidance of doubt, no Non-Debtor Counterparty shall be entitled to a claim against the Buyer, the Trustee, the Debtors, or the Debtors' Estates for any such default. Except for the Cure Costs for Assigned Contracts set forth on the Supplemental Assumption and Assignment Notice that was filed and served in accordance with the Sale Order (or such other amount as may be agreed to by Buyer and the Non-Debtor Counterparties to the applicable Assigned Contracts or otherwise ordered by the Court), there are no defaults existing under the Assigned Contracts, nor shall there exist any event or condition existing on the Closing Date that, with the passage of time or giving of notice, or both, would constitute such a default. For the avoidance of doubt, and notwithstanding anything to the contrary in the Asset Purchase Agreement, the Trustee and the Estates shall not be responsible for the

payment of any Cure Costs from funds or other property other than such funds allocated and received from Buyer for payment of Cure Costs under the Asset Purchase Agreement, and Buyer's payment of Cure Costs shall not (i) be deemed a purchase price adjustment that reduces the overall consideration received by the Debtors' Estates, or (ii) reduce the amount of the cash and contingent consideration that is otherwise payable by Buyer under the Asset Purchase Agreement.

31.    **Supplemental Notice of Assumption and Assignment**. The Trustee served and filed by January 22, 2024 a *Supplemental Notice of Potential Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with Sale to Buyer* (the "Supplemental Assumption and Assignment Notice") to each of the Non-Debtor Counterparties to the contracts being assumed and assigned to Buyer.  The schedule to the Supplemental Assumption and Assignment Notice shall include (i) the title or a description of the Assigned Contract, (ii) the name of the Non-Debtor Counterparty to the Assigned Contract, and (iii) any applicable Cure Cost, and shall provide a 14 day  deadline by which any Non-Debtor Counterparty must file an objection to the proposed assumption and assignment, including any objection to adequate assurances and cure amount.  No other or further notice is required.  The contact of any Non-Debtor Counterparty listed in the Supplemental Assumption and Assignment Notice that does not submit a timely objection to the Supplemental Assumption and Assignment Notice shall be deemed assumed and an Assigned Contract under the Asset Purchase Agreement and the Sale Order.  Upon receipt of any objection of a Non-Debtor Counterparty to the Supplemental Assumption and Assignment Notice, the Trustee, Buyer and objecting Counterparty will work in good faith to resolve the objection.  If the objection cannot be resolved, the Court will have a hearing on February 12, 2024 at 10:00 a.m.  Notwithstanding anything to the contrary in the Asset Purchase Agreement, Buyer may elect to remove any Contract from the Supplemental Assumption and Assignment Notice prior to the Outside Date, and Buyer shall then be relieved of any obligation to pay any applicable Cure Costs with respect to such removed Contract, and such removed Contract shall not be an Assigned Contract.  Notwithstanding anything to the contrary in the Asset Purchase Agreement or this Sale Order, Buyer may not add any Contract to the Supplemental Assumption and Assignment

Notice prior to or after the Outside Date without prior written consent of the applicable Non-Debtor Counterparty.  If an objection of a Non-Debtor Counterparty to the Supplemental Assumption and Assignment Notice is not resolved before the Outside Date, the associated contract shall be deemed rejected and shall not be an Assigned Contract under the Asset Purchase Agreement and this Sale Order.  Notwithstanding anything to the contrary in the Asset Purchase Agreement, the Outside Date shall be February 13, 2024.

32.     Any Non-Debtor Counterparties to an Assigned Contract who does not timely file and serve an objection in accordance with Paragraph 31 shall be barred from objecting, or asserting monetary or non-monetary defaults, with respect to any such Assigned Contract, and such Assigned Contract shall be deemed assumed by the Debtors and the Trustee and assigned to Buyer on the Closing Date pursuant to this Sale Order.  All Claims of a Non-Debtor Counterparty to an Assigned Contract that is assumed by Buyer that arise from or are related to such Non-Debtor Counterparty's Assigned Contract shall be void, and all proofs of claim filed by such Non-Debtor Counterparty, whether filed prior to or after the date of entry of this Sale Order, asserting a claim that arises from or is related to such Non-Debtor Counterparty's Assigned Contract, shall be deemed automatically expunged from the registry of claims in the Bankruptcy Cases without the need for any further action.  The terms of this Paragraph 32 shall not apply to Claims of a Non-Debtor Counterparty to an Excluded Contract, which Claims shall not be impacted or affected by the terms of this Sale Order or the Asset Purchase Agreement.

33.     **<u>Direction to Non-Debtor Counterparties</u>**.  All Non-Debtor Counterparties shall cooperate and expeditiously execute and deliver, upon the reasonable request of the Trustee, and shall not charge the Trustee or Buyer for, any instruments, applications, consents, or other documents that may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Sale involving Buyer.

34.     Nothing in this Sale Order, the Motion, the Supplemental Assumption and Assignment Notice (as amended from time to time), or any notice or any other document is or shall be deemed an admission by the Trustee that any contract, including any of the Excluded Contracts,

is an executory contract or, unless otherwise specified in the Asset Purchase Agreement, must be assumed and assigned pursuant to the Asset Purchase Agreement, in order to consummate the Sale.

35.     **Failure to Specify Provisions**.  The failure specifically to include any particular provisions of the Asset Purchase Agreement or any related agreements in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Trustee and Buyer that the Asset Purchase Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Sale Order.  Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent.

36.     **Failure to Enforce Assigned Contracts**.  The failure of the Trustee or Buyer at any time to enforce one or more terms or conditions of any Assigned Contract shall not constitute a waiver of any such terms or conditions, or of the Trustee's or Buyer's rights to enforce every term and condition of the Assigned Contracts.

37.     **No Waiver of Rights Under the DIP/Cash Collateral Order.**  Nothing in this Sale Order shall be deemed to waive, release, extinguish, or estop the Debtors, their Estates, their creditors, or the Trustee from asserting, or impairing, or diminishing such rights to assert, any right (including any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any Excluded Asset or other assets of the Debtors or their Estates remaining after the completion of the Closing.

38.     In respect of any Excluded Asset or other assets of the Debtors or their Estates remaining after the completion of the Closing—and only any such assets—nothing in this Sale Order shall (i) be deemed a waiver of the rights and remedies of the DIP Secured Parties (as defined in the DIP/Cash Collateral Order) or the Prepetition Secured Parties under the DIP/Cash Collateral Order; (ii) affect in any way the validity, perfection, priority or enforcement of the liens and claims granted to the DIP Secured Parties or the Prepetition Secured Parties under the DIP/Cash Collateral Order; or (iii) affect or limit in any way the validity, perfection, priority or enforcement of the DIP Liens, the Prepetition Liens, the Adequate Protection Liens, or Adequate Protection Superpriority

31

Claims (each as defined in the DIP/Cash Collateral Order), or any other rights and protections granted to the DIP Secured Parties or the Prepetition Secured Parties under the DIP/Cash Collateral Order.

39.    **Next-Highest Bids**.  At the Auction, the Trustee designated Elekta Limited as the Next-Highest Bidder for the assets that are subject to the Asset Purchase Agreement.[5]  The Next-Highest Bid of the foregoing Next-Highest Bidder shall remain open and irrevocable as set forth in the Bidding Procedures and Bidding Procedures Order, and, in the event that Buyer shall fail to close for whatever reason on the Purchased Assets that are the subject of the Asset Purchase Agreement, the Debtors and the Next-Highest Bidder shall close on the sale of such assets, subject to final negotiations on the Next-Highest Bidder's bid and executing a sale agreement with the Next-Highest Bidder, within the time period set forth in the Bidding Procedures and Bidding Procedures Order.

40.    **Good Faith Deposits**.  The Good Faith Deposits of each Potential Bidder, Qualified Bidder, and Next-Highest Bidder shall be disbursed as set forth in the Bidding Procedures Order and the Deposit of Buyer shall be disbursed pursuant to Section 2.5 of the Asset Purchase Agreement.

41.    **Reservation of Rights of the United States.**  Notwithstanding any provision in the Sale Motion, the APA, this Order, and any implementing sale documents (collectively, the "Sale Documents"), solely with respect to the United States government, nothing in the Sale Documents shall: (1) authorize the assumption, sale, assignment, or other transfer to the Buyer of any federal (i) grants, (ii) grant funds, (iii) contracts, (iv) property, including but not limited to, intellectual property and patents owned by or licensed to the United States government, (v) leases, (vi) agreements, (vii) certifications, and (viii) applications or other interests of the federal government (collectively, "Federal Interests") without compliance by the Debtors and the Buyer with all terms of the Federal Interests and with all applicable non-bankruptcy law; (2) be interpreted to set cure

---

[5]    *See Notice of Successful Bidder and Back-Up Bidder*  [D.I. 520].

amounts or to require the government to novate, approve or otherwise consent to the assumption, sale, assignment or other transfer of any Federal Interests; (3) waive, alter, or otherwise limit the United States' property rights, including but not limited to, property rights in inventory, inventions, records, patents, intellectual property, licenses, and data; (4) affect the setoff or recoupment rights or defenses of a governmental unit (as defined in 11 U.S.C. § 101(27)); (5) authorize the assumption, transfer, sale or assignment of any governmental unit's (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with any legal requirements, obligations, and approvals under non-bankruptcy law, that are applicable to such assumption, transfer, sale, assignment, or discontinuation; (6) release, nullify, preclude, or enjoin the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the manufacturer, or the post-sale owner, or operator of property; (7) confer exclusive jurisdiction to the Court except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code); (8) divest any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order, subject to the Debtors' and the Buyer's rights to assert before such tribunal or before this Court that any such laws are not in fact police or regulatory laws or that the matter should be heard by this Court; or (9) expand the scope of 11 U.S.C. § 525.

42.    **<u>Binding Order</u>**.  This Sale Order shall be binding upon and govern the acts of all persons and entities, including, without limitation, the Trustee, the Debtors, Buyer, the Next-Highest Bidder, and their respective successors and permitted assigns, including, without limitation, any successor or other trustee hereinafter appointed for the Debtors' Estates, all creditors of the Debtors and their Estates (whether known or unknown), all Non-Debtor Counterparties to any Assigned Contracts, all Governmental Authorities, filing agents, filing officers, title agents, recording agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release

any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets. The Asset Purchase Agreement and the Sale shall not be subject to rejection or avoidance under any circumstances. This Sale Order and the Asset Purchase Agreement shall inure to the benefit of the Debtors, their Estates, their creditors, Buyer and their respective successors and assigns.

43. **No Stay of Order**. The provisions of Bankruptcy Rules 6004 and 6006 staying the effectiveness of this Sale Order for fourteen (14) days are hereby waived, and this Sale Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. Any party desiring to appeal this Sale Order must exercise due diligence in filing an appeal, pursuing a stay and obtaining a stay prior to the Closing, or risk its appeal being foreclosed as moot.

44. **Modification of Automatic Stay**. The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified with respect to the Debtors, their Estates, and the Purchased Assets to the extent necessary, without further order of the Court, to allow Buyer to deliver any notice provided for in the Asset Purchase Agreement and allow Buyer to take any and all actions as and when permitted under the Asset Purchase Agreement, as applicable.

45. **Retention of Jurisdiction**. The Court shall retain exclusive jurisdiction to (i) interpret, implement and enforce the terms and provisions of this Sale Order, the Bidding Procedures Order, and the Asset Purchase Agreement, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith, in all respects, (ii) decide any disputes concerning this Sale Order, the Asset Purchase Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Asset Purchase Agreement and this Sale Order, including, but not limited to, the interpretation of the terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the Purchased Assets and any Assigned Contracts and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Encumbrances, and (iii) enforce the injunctions set forth herein.

46.     **No 1146(a) Exemption**.  For the avoidance of doubt, nothing in this Sale Order shall constitute, pursuant to section 1146(a) of the Bankruptcy Code, the grant of a tax exemption under a plan confirmed under section 1129 or 1191.

47.     **Further Assurances**.  From time to time, as and when requested by the other, the Trustee and Buyer, as the case may be, shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale with respect to Buyer, including, such actions as may be necessary to vest, perfect or confirm, or record or otherwise, in Buyer its right, title and interest in and to the Purchased Assets, and the Assigned Contracts, as applicable, subject to the provisions of the Asset Purchase Agreement.

48.     **Governing Terms**.  Unless otherwise provided herein, to the extent this Sale Order is inconsistent with the Bidding Procedures Order or any other prior order or pleading in the Bankruptcy Cases, or the terms of the Asset Purchase Agreement (including all ancillary documents executed in connection with the Asset Purchase Agreement), this Sale Order shall govern.

49.     **Headings**.  The headings in this Sale Order are for purposes of reference only and shall not limit or otherwise affect the meaning of the Sale Order.

**Dated: January 23rd, 2024**
**Wilmington, Delaware**

**KAREN B. OWENS**
**UNITED STATES BANKRUPTCY JUDGE**