IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ViewRay, Inc., et al.,[1]<br><br><br><br>Debtors. | Chapter 7<br><br>Case No. 23-10935 (KBO)<br><br>(Jointly Administered)<br><br>**Re: D.I. 582** |

**OBJECTION OF SCAN GLOBAL LOGISTICS TO TRUSTEE'S DISTRIBUTION MOTION**

Scan Global Logistics ("Scan Global"), by and through undersigned counsel, files this Objection to the *Trustee's Motion to Distribute the Proceeds from the Sale of the Debtors' Assets Pursuant to the Sharing Agreement with the Lenders* (the "Distribution Motion") and in support thereof state as follows:

1. ViewRay, Inc. and the affiliated debtors (the "Debtors") filed their chapter 11 petitions on July 16, 2023 (the "Petition Date"), and on October 26, 2023 (the "Conversion Date"), the Debtors' cases converted from Chapter 11 cases to Chapter 7 cases.

2. On July 17, 2023, and on August 7, 2023, the Debtors filed their Motion and the Supplemental Motion, respectively, requesting, *inter alia*, Court approval of super-priority senior secured debtor-in-possession financing, granting liens and super-priority administrative expense claim status, and authority to use cash collateral (the "DIP Motion").

3. Both pre-petition and post-petition, Scan Global has been providing the Debtors with shipping, carrier, and warehouse services. Attached hereto as **Exhibit A** is the Debtors'

---

[1] The last four digits of the Debtors' federal tax identification numbers are: ViewRay, Inc. (7485) and ViewRay Technologies, Inc. (8429). The mailing address for each of the Debtors is: 2 Thermo Fisher Way, Oakwood, OH 44146.

executed Customer Profile, which acknowledges receipt and acceptance of Scan Global's terms and conditions. Attached hereto as **Exhibit B** is the Debtors' executed Power of Attorney and Acknowledgement of Terms and Conditions of Service, which similarly acknowledges receipt of Scan Global's terms and conditions. Attached hereto as **Exhibit C** is Scan Global's North American Terms and Conditions, and attached hereto as **Exhibit D** is Scan Global's International Terms and Conditions, both of which expressly state that Scan Global has a general lien upon all property in its possession.

4. Scan Global believes that both pre-petition and post-petition it has been providing most the Debtors' logistical and warehousing needs. Indeed, Scan Global understands that it provides somewhere between 70 and 90% of the Debtors' warehousing, shipping, and logistical needs. Pursuant to the Uniform Commercial Code as well as the common law, Scan Global has a first priority statutory and possessory lien over goods in its possession. *See* U.C.C. §§ 7-307, 7-209, 9-333. Pursuant to 11 U.S.C. § 546(i), the Debtors (and now the Trustee) could not avoid Scan Global's liens.

5. As of the Petition Date, Scan Global was owed approximately $2,292,633.00 for pre-petition shipping and warehousing services. Including post-petition and post-conversion services that Scan Global has provided, Scan Global is currently owed approximately $3 million.

6. Scan Global objected to the DIP Motion, requesting that the order approving the DIP Motion (the "DIP Order") clearly articulate that any claim, lien, or interest asserted by the DIP lender would be subject to Scan Global's liens, and the DIP Order that was ultimately entered by this Court contained language that preserved Scan Global's liens.

7. After the Conversion Date, on December 21, 2023, the Trustee filed a Motion for (I) Approval of Sharing Agreement and Carve-Out with Lenders, and (II) Related Relief (the "Fee

Sharing Motion"), and Scan Global objected to the extent that the relief requested in the Fee Sharing Motion impaired Scan Global's possessory liens. The Order that this Court entered approving the Fee Sharing Motion contained a provision preserving Scan Global's rights with respect to its possessory liens.

8. Prior to the Conversion Date, the Debtors filed a motion to sell substantially all of their assets (the "Sale Motion"), and Scan Global filed an objection to the Sale Motion on the same basis that it objected to the DIP Motion, in that it had a secured possessory lien on all of the goods in its possession.

9. Post-conversion and prior to the sale, the Trustee requested that Scan Global provide the Trustee with a list of the Debtors' assets that were in Scan Global's possession. On December 3, 2023, Scan Global provided the Trustee with multiple spreadsheets detailing not only the goods that were in Scan Global's possession but also providing pricing information on those goods. Attached hereto as **Exhibit E** is the email from Scan Global to the Trustee providing the requested information. Due to the proprietary and confidential nature of the information contained in the actual spreadsheets, the spreadsheets themselves are not attached to this objection.

10. On January 23, 2024, this Court entered an order approving the sale (the "Sale Order"), which, like the DIP Order, preserved Scan Global's liens with Scan Global's liens attaching to the sale proceeds.

11. The terms of the sale were that the purchaser of the Debtors' assets paid more than $5 million in cash and assumed an additional several million dollars of certain liabilities. Scan Global understands that there was a backup bidder when the Trustee was selling the Debtors' assets. Upon information and belief, the backup bidder was willing to pay $1 million just for the

3

Debtors' intellectual property. The backup bid, which again was limited just to the Debtors' intellectual property, is one indication of the value of the Debtors' intellectual property.

12. Throughout the Chapter 11 process, the Debtors represented to Scan Global that the goods in its possession were worth significantly more than Scan Global's prepetition lien claim and that Scan Global was over-secured by several million dollars. Scan Global's records similarly reflected that Scan Global was significantly over-secured with the goods in its possession having a value well in excess of three times the value of Scan Global's secured claim.

13. After the Conversion Date, Scan Global received multiple requests from customers of the Debtors requesting to purchase directly from Scan Global the goods in Scan Global's possession. While Scan Global, of course, refused to release any of the goods in its possession (and informed the Trustee of these overtures from third parties), the mere requests from these third parties reflected that there was a market for the goods in Scan Global's possession.

14. Scan Global also notes that another shipping and warehouse provider to the Debtors refused to release goods in its possession after the Sale Order was entered, resulting in the purchaser filing a motion to have that shipper/warehouseman held in contempt on March 20, 2024. (*See* D.I. 562). Significantly, in that motion, the purchaser asserted that the goods in its possession had significant value.

15. In the Trustee's Distribution Motion, the Trustee asserts that Scan Global has failed to "support its assertions with evidence to demonstrate a superior lien to the Lenders." *See* Distribution Motion ¶ 21. The Trustee's assertion is confusing because Scan Global was never requested by the Debtors, and certainly not by the Trustee, to present any "evidence" in support of its lien, as both parties were well aware that Scan Global was in possession of the goods and had provided both the Debtors and the Trustee with the legal authority that supported its position that

4

it was secured by virtue of a common law and statutory lien. Moreover, this was a point which both the Debtors and the Trustee appeared to acknowledge up until the point that the Distribution Motion was filed.

16. Indeed, when Scan Global requested information from the Trustee about its expected distribution, Scan Global was informed that the Trustee was waiting for the purchaser to provide its allocation of the purchase price to the assets that it purchased, including the goods in Scan Global's possession that were subject to Scan Global's possessory lien. After the deadline had passed for the purchaser to provide its allocation to the Trustee of the sale proceeds, and after Scan Global requested that the Trustee share the information about the purchaser's allocation, Scan Global was suddenly and surprisingly informed that the Trustee would not be sharing this information with Scan Global because the Trustee now considered this information to be irrelevant.

17. After being informed of the Trustee's refusal to share information regarding the purchaser's allocation of the purchase price, Scan Global contacted the purchaser directly and was advised that the purchaser had allocated a significant portion of the purchase price to the Debtors' hard assets such as the inventory in Scan Global's possession. Scan Global also confirmed with the purchaser that the purchaser was currently valuing the inventory that Scan Global still had in its possession in its overseas facilities at approximately $4 million. It is important to note that this was just the value of the overseas inventory and did not include the value of the inventory that was in Scan Global's possession in the United States at the time that the Sale Order was entered.

18. Again, Scan Global is confused by the Trustee's claim that Scan Global has failed to produce "evidence" to substantiate its claim and notes that throughout the Chapter 11 case, the Debtors recognized Scan Global's claim and there were significant negotiations about the release

of any inventory in Scan Global's possession because Scan Global had a priority lien on all goods in its possession. Based upon the Debtors' representations that Scan Global was over-secured as well as the concern that the Debtors have expressed throughout the Chapter 11 process about the need to access goods that are needed by the cancer patients who utilize the Debtors' products but are in Scan Global's possession and are subject to Scan Global's statutory and possessory liens, Scan Global has worked with the Debtors and continued to release and ship goods in its possession. Scan Global's was willing to accommodate the needs of the Debtors' and the Debtors' customers (and cancer patients) notwithstanding the fact that Scan Global had a right to refuse to deliver or release and goods in its possession unless it was paid its prepetition debt or was provided with adequate protection in the form of a replacement lien. *See* 11 U.S.C. § 363(e).

19.   In summary, the Trustee conducted a sale of the Debtors' assets. There was not a sale of a going concern business and, as such, there was no goodwill or similar intangible property that was sold. Among the assets that were sold was the inventory that was in Scan Global's possession and subject to Scan Global's possessory lien. Also among the assets that were sold was the Debtors' intellectual property. Upon information and belief, when the purchaser allocated the cash portion of its purchase price, the vast majority of the allocation was applied to the Debtors' hard assets, including the inventory that was Scan Global's possession and subject to Scan Global's possessory lien. Upon information and belief, the backup bidder who submitted a bid limited to the Debtors' intellectual property was willing to pay $1 million for the Debtors' intellectual property. The Trustee is already in possession of evidence related to Scan Global's lien, including the value of the lien, which evidence includes the purchaser's allocation of the cash portion of its purchase price. It is actually the Trustee, as opposed to Scan Global, who has refused to produce

evidence of the respective value of the liens of Scan Global and the lenders, apparently on the basis that the Trustee does not like the evidence in its possession.

20.     Scan Global has cooperated with the Debtors and has been extremely patient throughout this process that it had no role in creating and which it did not control. While other constituencies appear to have been paid, Scan Global has not been paid notwithstanding its priority lien position and notwithstanding representations from the Debtors that there were funds that had been allocated to pay Scan Global for the services that it rendered during the Chapter 11 winddown process. Scan Global is now entitled to be paid the full amount of its priority secured claim. It is patently incorrect to suggest that Scan Global has failed in any way to provide the Trustee with evidence of its secured claim, as it has provided both the legal authority to support its claim as well as evidence regarding the value of its priority lien.

WHEREFORE, Scan Global respectfully requests that this Honorable Court condition the relief sought in the Trustee's Distribution Motion upon the full and complete satisfaction of Scan Global's secured claim as contemplated by the DIP Order, the Fee Sharing Order, and the Sale Order, and grant Scan Global such other relief as the Court deems just and proper.

Dated: May 15, 2024

                                        GELLERT SEITZ BUSENKELL &
                                        BROWN

                                        */s/ Charles J. Brown, III*
                                        Charles J. Brown, III (DE Bar No. 3368)
                                        1201 North Orange Street, Suite 300
                                        Wilmington, DE 19801
                                        Telephone: 302-425-5814
                                        E-Mail: cbrown@gsbblaw.com

                                        *Attorneys for Scan Global Logistics*