Exhibit A

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| CSC 800-858-5294 |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|
| FILINGDEPT@CSCINFO.COM |

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

```
801 ADLAI STEVENSON DR [243570480]
SPRINGFIELD, IL 62703
US
```

Delaware Department of State
U.C.C. Filing Section
Filed: 07:28 PM 11/14/2022
U.C.C. Initial Filing No: 2022 9447814

Service Request No:   20224014711

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| VIEWRAY TECHNOLOGIES, INC. | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1099 18TH STREET, SUITE 3000 | DENVER | CO | 80202 | US |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):  Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| MIDCAP FUNDING IV TRUST, AS AGENT | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 7255 WOODMONT AVE., STE. 300* | BETHESDA | MD | 20814 | US |

4. **COLLATERAL:** This financing statement covers the following collateral:
See Exhibit "A", attached hereto and made a part hereof.  *Secured Party may be contacted at the above address c/o MidCap Financial Services, LLC, as servicer.
Collateral Description - please see attached

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)   ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):  ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

International Association of Commercial Administrators

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

**Exhibit A**

Collateral Description:

The Collateral consists of all of Debtor's assets, including without limitation, all of Debtor's right, title and interest in and to the following, whether now owned or hereafter created, acquired or arising, but in all cases excluding Excluded Property (as defined below):

(a) all goods, Accounts (including health-care insurance receivables), equipment, inventory, contracts together with all contract rights or rights to payment of money, leases, license agreements, franchise agreements, General Intangibles, Intellectual Property, IP Proceeds, commercial tort claims (including each such claim listed on Schedule 9.2(d) of the Credit Agreement (as defined below)), documents, instruments (including any promissory notes), chattel paper (whether tangible or electronic), vehicles and title documents with respect to vehicles, cash, deposit accounts, securities accounts, fixtures, letter of credit rights (whether or not the letter of credit is evidenced by a writing), securities, and all other investment property, supporting obligations, and financial assets, whether now owned or hereafter acquired, wherever located;

(b) Debtor's books and records relating to any of the foregoing and all rights of access to Debtor's books and records; and

(c) any and all claims, rights and interests in any of the above and all substitutions for, additions, attachments, accessories, accessions and improvements to and replacements, products, proceeds and insurance proceeds of any or all of the foregoing.

The term "**Accounts**" means, collectively, (a) any right to payment of a monetary obligation, whether or not earned by performance, (b) without duplication, any "account" (as defined in the UCC (as defined below)), any accounts receivable (whether in the form of payments for services rendered or goods sold, rents, license fees or otherwise), any "health-care-insurance receivables" (as defined in the UCC), any "payment intangibles" (as defined in the UCC) and all other rights to payment and/or reimbursement of every kind and description, whether or not earned by performance, (c) all accounts, "general intangibles" (as defined in the UCC), Intellectual Property, rights, remedies, Guarantees (as defined in the Credit Agreement), "supporting obligations" (as defined in the UCC), "letter-of-credit rights" (as defined in the UCC) and security interests in respect of the foregoing, all rights of enforcement and collection, all books and records evidencing or related to the foregoing, and all rights under the Financing Documents (as defined in the Credit Agreement) in respect of the foregoing, and (d) all proceeds of any of the foregoing.

The term "**Credit Agreement**" means that certain Credit, Guaranty and Security Agreement, dated on or about November 14, 2022 by and among Secured Party, as administrative agent, the lenders from time to time party thereto (the "**Lenders**"), Debtor, the other borrowers party thereto from time to time (the "**Borrowers**"), and the other credit parties from time to time party thereto (together with the Borrowers, the "**Credit Parties**"), as it may be amended, modified, supplemented and restated from time to time.

The term "**Excluded Property**" means, collectively:

(a) prior to the occurrence of a Springing IP Lien Event, all Intellectual Property except (i) to the extent that it is necessary under applicable law to have a lien and security interest in any such Intellectual Property in order to have a perfected lien and security interest in and to IP Proceeds (defined below), and for the avoidance of any doubt, the Collateral shall include, and Secured Party shall have a lien and security interest in, (A) all IP Proceeds, and (B) all payments with respect to IP Proceeds that are received after the commencement of a bankruptcy or insolvency proceeding, and (ii) Intellectual Property constituting computer programs, tapes, programs, discs, information, records, and data, all computers, word processors, printers, switches, interfaces, web servers, website service contracts, internet connection contract or line lease, website hosting service contract, website license agreements, back-up copies of website content, contracts with website advertisers, technology escrow agreements, website content development agreements, all rights, of whatever form, in and to domain names, instructional material, and connectors and all parts, accessories, additions, substitutions, or options together with all property or equipment used in connection with any of the above or which are used to operate or cause to operate any features, special applications, format controls, options or software of any or all of the above-mentioned items, in all cases of this clause (ii), solely to the extent needed to assist in the enforcement of a security interest against the Accounts; *provided, however*, that, upon the occurrence of a Springing IP Lien Event and continuing at all times thereafter (whether or not the Springing IP Lien Event continues), Intellectual Property shall no longer constitute "Excluded Property" pursuant to this clause (a) and "Collateral" shall immediately include all Intellectual Property of Debtor (including, for the avoidance of doubt, all IP Proceeds) automatically and without notice or any further action by Secured Party, any Lender or Debtor;

(b) any lease, license, contract, permit, letter of credit, purchase money arrangement, instrument or agreement to which Debtor is a party or any of its rights or interests thereunder if and to the extent that the grant of such security interest shall constitute a result in (i) the abandonment, invalidation or unenforceability of any right, title or interest of Debtor therein or (ii) result in a breach or termination pursuant to the terms of, or default under, any such lease, license, contract, permit, letter of credit, purchase money arrangement, instrument or agreement;

(c) any governmental licenses or state or local franchises, charters and authorizations, to the extent that Secured Party may not validly possess a security interest in any such license, franchise, charter or authorization under applicable law;

(d) any asset which is subject to a purchase money lien or Capital Lease (as defined in the Credit Agreement) permitted under the Credit Agreement to the extent the granting of a security interest in such asset is prohibited pursuant to the terms of the contract governing such purchase money lien or Capital Lease;

(e) any "intent-to-use" trademarks or service mark applications for which an amendment to allege use or statement of use has not been filed under 15 U.S.C. § 1051 Section 1(c) or Section 1(d), respectively or if filed, has not been deemed in conformance with 15 U.S.C. § 1051(a) or examined and accepted, respectively by the United States Patent and Trademark Office; and

(f) more than 65% of the voting capital stock of any Restricted Foreign Subsidiary (as defined in the Credit Agreement) to the extent that the pledge of a greater percentage of such voting stock would reasonably be expected to have a material adverse tax consequence to Debtor.

*provided* that (x) any such limitation described in the foregoing clauses (a) and (b) on the security interests granted hereunder shall apply only to the extent that any such prohibition could not be rendered ineffective pursuant to the UCC or any other applicable law (including Sections 9-406, 9-407 and 9-408

of the UCC) or principles of equity, (y) in the event of the termination or elimination of any such prohibition or the requirement for any consent contained in such contract, agreement, permit, lease or license or in any applicable law, to the extent sufficient to permit any such item to become Collateral hereunder, or upon the granting of any such consent, or waiving or terminating any requirement for such consent, a security interest in such contract, agreement, permit, lease, license, franchise, authorization or asset shall be automatically and simultaneously granted hereunder and shall be included as Collateral hereunder, and (z) all rights to payment of money due or to become due pursuant to, and all products and proceeds (and rights to the proceeds) from the sale of, any Excluded Property shall be and at all times remain subject to the security interests created by the Credit Agreement (unless such proceeds would independently constitute Excluded Property).

The term "**General Intangible**" means any "general intangible" as defined in Article 9 of the UCC, and any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas or other minerals before extraction, but including payment intangibles and software.

The term "**Intellectual Property**" means all copyright rights, copyright applications, copyright registrations and like protections in each work of authorship and derivative work, whether published or unpublished, any patents, patent applications and like protections, including improvements, divisions, continuations, renewals, reissues, extensions, and continuations-in-part of the same, trademarks, trade names, service marks, mask works, rights of use of any name, domain names, or any other similar rights, any applications therefor, whether registered or not, know-how, operating manuals, trade secret rights, clinical and non-clinical data, rights to unpatented inventions, and any claims for damage by way of any past, present, or future infringement of any of the foregoing.

The term "**IP Proceeds**" means, collectively, all cash, Accounts, license and royalty fees, claims, products, awards, judgments, insurance claims, and other revenues, proceeds or income, arising out of, derived from or relating to any Intellectual Property of Debtor, and any claims for damage by way of any past, present or future infringement of any Intellectual Property of Debtor (including, without limitation, all cash, royalty fees, other proceeds, Accounts and General Intangibles that consist of rights of payment to or on behalf of Debtor and the proceeds from the sale, licensing or other disposition of all or any part of, or rights in, any Intellectual Property by or on behalf of Debtor).

The term "**Springing IP Lien Event**" means that, on any date, the Credit Parties have allowed, as of the close of business on such date, the aggregate Credit Party Unrestricted Cash (as defined in the Credit Agreement) to be less than an amount equal to the greater of (a) $50,000,000, and (b) an amount equal to 110% of the combined aggregate outstanding principal balance of the Term Loans (as defined in the Credit Agreement) and the Revolving Loans (as defined in the Credit Agreement) as of such date.

The term "**UCC**" means the Uniform Commercial Code of the State of New York or of any other state the laws of which are required to be applied in connection with the perfection of security interests in any Collateral.

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| CSC 800-858-5294 |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|
| FILINGDEPT@CSCINFO.COM |

| C. SEND ACKNOWLEDGMENT TO: (Name and Address) |
|---|
| 801 ADLAI STEVENSON DR [243569892]<br>SPRINGFIELD, IL 62703<br>US |

**Delaware Department of State**
**U.C.C. Filing Section**
Filed: 07:28 PM 11/14/2022
U.C.C. Initial Filing No: 2022 9447822

Service Request No: 20224014712

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|
| VIEWRAY, INC. | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 1099 18TH STREET, SUITE 3000 | DENVER | CO / 80202 | US |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|
| | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|
| MIDCAP FUNDING IV TRUST, AS AGENT | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 7255 WOODMONT AVE., STE. 300* | BETHESDA | MD / 20814 | US |

**4. COLLATERAL:** This financing statement covers the following collateral:
See Exhibit "A", attached hereto and made a part hereof.   *Secured Party may be contacted at the above address c/o MidCap Financial Services, LLC, as servicer.
Collateral Description - please see attached

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

International Association of Commercial Administrators

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

**Exhibit A**

Collateral Description:

The Collateral consists of all of Debtor's assets, including without limitation, all of Debtor's right, title and interest in and to the following, whether now owned or hereafter created, acquired or arising, but in all cases excluding Excluded Property (as defined below):

(a) all goods, Accounts (including health-care insurance receivables), equipment, inventory, contracts together with all contract rights or rights to payment of money, leases, license agreements, franchise agreements, General Intangibles, Intellectual Property, IP Proceeds, commercial tort claims (including each such claim listed on Schedule 9.2(d) of the Credit Agreement (as defined below)), documents, instruments (including any promissory notes), chattel paper (whether tangible or electronic), vehicles and title documents with respect to vehicles, cash, deposit accounts, securities accounts, fixtures, letter of credit rights (whether or not the letter of credit is evidenced by a writing), securities, and all other investment property, supporting obligations, and financial assets, whether now owned or hereafter acquired, wherever located;

(b) Debtor's books and records relating to any of the foregoing and all rights of access to Debtor's books and records; and

(c) any and all claims, rights and interests in any of the above and all substitutions for, additions, attachments, accessories, accessions and improvements to and replacements, products, proceeds and insurance proceeds of any or all of the foregoing.

The term "**Accounts**" means, collectively, (a) any right to payment of a monetary obligation, whether or not earned by performance, (b) without duplication, any "account" (as defined in the UCC (as defined below)), any accounts receivable (whether in the form of payments for services rendered or goods sold, rents, license fees or otherwise), any "health-care-insurance receivables" (as defined in the UCC), any "payment intangibles" (as defined in the UCC) and all other rights to payment and/or reimbursement of every kind and description, whether or not earned by performance, (c) all accounts, "general intangibles" (as defined in the UCC), Intellectual Property, rights, remedies, Guarantees (as defined in the Credit Agreement), "supporting obligations" (as defined in the UCC), "letter-of-credit rights" (as defined in the UCC) and security interests in respect of the foregoing, all rights of enforcement and collection, all books and records evidencing or related to the foregoing, and all rights under the Financing Documents (as defined in the Credit Agreement) in respect of the foregoing, and (d) all proceeds of any of the foregoing.

The term "**Credit Agreement**" means that certain Credit, Guaranty and Security Agreement, dated on or about November 14, 2022 by and among Secured Party, as administrative agent, the lenders from time to time party thereto (the "**Lenders**"), Debtor, the other borrowers party thereto from time to time (the "**Borrowers**"), and the other credit parties from time to time party thereto (together with the Borrowers, the "**Credit Parties**"), as it may be amended, modified, supplemented and restated from time to time.

The term "**Excluded Property**" means, collectively:

(a) prior to the occurrence of a Springing IP Lien Event, all Intellectual Property except (i) to the extent that it is necessary under applicable law to have a lien and security interest in any such Intellectual Property in order to have a perfected lien and security interest in and to IP Proceeds (defined below), and for the avoidance of any doubt, the Collateral shall include, and Secured Party shall have a lien and security interest in, (A) all IP Proceeds, and (B) all payments with respect to IP Proceeds that are received after the commencement of a bankruptcy or insolvency proceeding, and (ii) Intellectual Property constituting computer programs, tapes, programs, discs, information, records, and data, all computers, word processors, printers, switches, interfaces, web servers, website service contracts, internet connection contract or line lease, website hosting service contract, website license agreements, back-up copies of website content, contracts with website advertisers, technology escrow agreements, website content development agreements, all rights, of whatever form, in and to domain names, instructional material, and connectors and all parts, accessories, additions, substitutions, or options together with all property or equipment used in connection with any of the above or which are used to operate or cause to operate any features, special applications, format controls, options or software of any or all of the above-mentioned items, in all cases of this clause (ii), solely to the extent needed to assist in the enforcement of a security interest against the Accounts; *provided, however*, that, upon the occurrence of a Springing IP Lien Event and continuing at all times thereafter (whether or not the Springing IP Lien Event continues), Intellectual Property shall no longer constitute "Excluded Property" pursuant to this clause (a) and "Collateral" shall immediately include all Intellectual Property of Debtor (including, for the avoidance of doubt, all IP Proceeds) automatically and without notice or any further action by Secured Party, any Lender or Debtor;

(b) any lease, license, contract, permit, letter of credit, purchase money arrangement, instrument or agreement to which Debtor is a party or any of its rights or interests thereunder if and to the extent that the grant of such security interest shall constitute a result in (i) the abandonment, invalidation or unenforceability of any right, title or interest of Debtor therein or (ii) result in a breach or termination pursuant to the terms of, or default under, any such lease, license, contract, permit, letter of credit, purchase money arrangement, instrument or agreement;

(c) any governmental licenses or state or local franchises, charters and authorizations, to the extent that Secured Party may not validly possess a security interest in any such license, franchise, charter or authorization under applicable law;

(d) any asset which is subject to a purchase money lien or Capital Lease (as defined in the Credit Agreement) permitted under the Credit Agreement to the extent the granting of a security interest in such asset is prohibited pursuant to the terms of the contract governing such purchase money lien or Capital Lease;

(e) any "intent-to-use" trademarks or service mark applications for which an amendment to allege use or statement of use has not been filed under 15 U.S.C. § 1051 Section 1(c) or Section 1(d), respectively or if filed, has not been deemed in conformance with 15 U.S.C. § 1051(a) or examined and accepted, respectively by the United States Patent and Trademark Office; and

(f) more than 65% of the voting capital stock of any Restricted Foreign Subsidiary (as defined in the Credit Agreement) to the extent that the pledge of a greater percentage of such voting stock would reasonably be expected to have a material adverse tax consequence to Debtor.

*provided* that (x) any such limitation described in the foregoing clauses (a) and (b) on the security interests granted hereunder shall apply only to the extent that any such prohibition could not be rendered ineffective pursuant to the UCC or any other applicable law (including Sections 9-406, 9-407 and 9-408

of the UCC) or principles of equity, (y) in the event of the termination or elimination of any such prohibition or the requirement for any consent contained in such contract, agreement, permit, lease or license or in any applicable law, to the extent sufficient to permit any such item to become Collateral hereunder, or upon the granting of any such consent, or waiving or terminating any requirement for such consent, a security interest in such contract, agreement, permit, lease, license, franchise, authorization or asset shall be automatically and simultaneously granted hereunder and shall be included as Collateral hereunder, and (z) all rights to payment of money due or to become due pursuant to, and all products and proceeds (and rights to the proceeds) from the sale of, any Excluded Property shall be and at all times remain subject to the security interests created by the Credit Agreement (unless such proceeds would independently constitute Excluded Property).

The term "**General Intangible**" means any "general intangible" as defined in Article 9 of the UCC, and any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas or other minerals before extraction, but including payment intangibles and software.

The term "**Intellectual Property**" means all copyright rights, copyright applications, copyright registrations and like protections in each work of authorship and derivative work, whether published or unpublished, any patents, patent applications and like protections, including improvements, divisions, continuations, renewals, reissues, extensions, and continuations-in-part of the same, trademarks, trade names, service marks, mask works, rights of use of any name, domain names, or any other similar rights, any applications therefor, whether registered or not, know-how, operating manuals, trade secret rights, clinical and non-clinical data, rights to unpatented inventions, and any claims for damage by way of any past, present, or future infringement of any of the foregoing.

The term "**IP Proceeds**" means, collectively, all cash, Accounts, license and royalty fees, claims, products, awards, judgments, insurance claims, and other revenues, proceeds or income, arising out of, derived from or relating to any Intellectual Property of Debtor, and any claims for damage by way of any past, present or future infringement of any Intellectual Property of Debtor (including, without limitation, all cash, royalty fees, other proceeds, Accounts and General Intangibles that consist of rights of payment to or on behalf of Debtor and the proceeds from the sale, licensing or other disposition of all or any part of, or rights in, any Intellectual Property by or on behalf of Debtor).

The term "**Springing IP Lien Event**" means that, on any date, the Credit Parties have allowed, as of the close of business on such date, the aggregate Credit Party Unrestricted Cash (as defined in the Credit Agreement) to be less than an amount equal to the greater of (a) $50,000,000, and (b) an amount equal to 110% of the combined aggregate outstanding principal balance of the Term Loans (as defined in the Credit Agreement) and the Revolving Loans (as defined in the Credit Agreement) as of such date.

The term "**UCC**" means the Uniform Commercial Code of the State of New York or of any other state the laws of which are required to be applied in connection with the perfection of security interests in any Collateral.

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
CSC 800-858-5294

B. E-MAIL CONTACT AT FILER (optional)
FILINGDEPT@CSCINFO.COM

C. SEND ACKNOWLEDGMENT TO: (Name and Address)
801 ADLAI STEVENSON DR [251902739]
SPRINGFIELD, IL 62703
US

**Delaware Department of State**
**U.C.C. Filing Section**
Filed: 07:16 PM 03/22/2023
U.C.C. Initial Filing No: 2022 9447822
Amendment No: 2023 2192853
Service Request No: 20231107070

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
20229447822

1b. [ ] This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. [ ] **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. [ ] **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. [ ] **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. [ ] **PARTY INFORMATION CHANGE:**
Check one of these two boxes: [ ] Debtor or [ ] Secured Party of record
AND Check one of these three boxes to:
[ ] CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
[ ] ADD name: Complete item 7a or 7b, and item 7c
[ ] DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)
6a. ORGANIZATION'S NAME
OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)
7a. ORGANIZATION'S NAME
OR 7b. INDIVIDUAL'S SURNAME
INDIVIDUAL'S FIRST PERSONAL NAME
INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX
7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

8. [✓] **COLLATERAL CHANGE:** Also check one of these four boxes: [ ] ADD collateral [ ] DELETE collateral [✓] RESTATE covered collateral [ ] ASSIGN collateral
Indicate collateral:
**All assets of the Debtor, now owned or hereafter acquired or arising, and wherever located, and all products and proceeds of the foregoing.  *Secured Party may be contacted at the above address c/o MidCap Financial Services, LLC, as servicer.**

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here [ ] and provide name of authorizing Debtor
9a. ORGANIZATION'S NAME
MIDCAP FUNDING IV TRUST, AS AGENT
OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10. OPTIONAL FILER REFERENCE DATA:
DEBTOR:VIEWRAY, INC.

International Association of Commercial Administrator
FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC 800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
FILINGDEPT@CSCINFO.COM

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

801 ADLAI STEVENSON DR [251902417]
SPRINGFIELD, IL 62703
US

Delaware Department of State
U.C.C. Filing Section
Filed: 10:55 AM 03/28/2023
U.C.C. Initial Filing No: 2022 9447814
Amendment No: 2023 2330032
Service Request No: 20231175727

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
20229447814

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**
Check one of these two boxes: ☐ Debtor or ☐ Secured Party of record
AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)
6a. ORGANIZATION'S NAME:
OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b)
7a. ORGANIZATION'S NAME:
OR 7b. INDIVIDUAL'S SURNAME
INDIVIDUAL'S FIRST PERSONAL NAME
INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX
7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

**8.** ☑ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☑ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

All assets of the Debtor, now owned or hereafter acquired or arising, and wherever located, and all products and proceeds of the foregoing. *Secured Party may be contacted at the above address c/o MidCap Financial Services, LLC, as servicer.

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor
9a. ORGANIZATION'S NAME:
MIDCAP FUNDING IV TRUST, AS AGENT
OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**10. OPTIONAL FILER REFERENCE DATA:**
DEBTOR:VIEWRAY TECHNOLOGIES, INC.

International Association of Commercial Administrator
FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)