# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>ViewRay, Inc., *et al.*,<br><br>Debtors.¹ | Chapter 7<br><br>Case No. 23-10935 (KBO)<br>(Jointly Administered)<br><br>**Re: D.I. 582 & 585** |

## REPLY OF GEORGE L. MILLER, CHAPTER 7 TRUSTEE, IN FURTHER SUPPORT OF THE TRUSTEE'S DISTRIBUTION MOTION

George L. Miller, as the duly-appointed chapter 7 trustee (the "Trustee") for the bankruptcy estates (the "Bankruptcy Estates") of ViewRay, Inc. and ViewRay Technologies, Inc. (collectively, the "Debtors"), respectfully submits this Reply to the *Objection of Scan Global Logistics to Trustee's Distribution Motion* [D.I. 585] and states as follows in further support of the *Motion of George L. Miller, the Chapter 7 Trustee, for Authorization to Distribute the Proceeds from the Sale of the Debtors' Assets Pursuant to the Sharing Agreement with the Lenders* [D.I. 582] (the "Distribution Motion"):²

1. Although Scan Global Logistics ("Scan Global") preserved its right with respect to asserting a priority lien in the Debtors' case, it must still meet its burden of proving the priority, validity, and extent that its asserted liens in the Debtors' inventory—including, value of the inventory.

---

¹ The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, are ViewRay, Inc. (7485) and ViewRay Technologies, Inc. (8429). The mailing address for each of the Debtors is 2 Thermo Fisher Way, Oakwood, OH 44146.

² Capitalized terms not defined herein are used as defined in the Distribution Motion or the Final DIP Order (defined below).

2. Scan Global argues, without any evidentiary support or legal analysis, that it has a priority lien in the inventory sold by the Trustee and that it should be paid $3 million in favor of that alleged lien. In support of this argument, Scan Global primarily relies on the Purchaser's allocation of the proceeds for the basis to determine the amount of Scan Global's purported priority lien. This argument fails for multiple reasons, and its Objection should be overruled.

3. The Trustee acknowledged in prior papers filed in these cases, that the liens and claims of the Debtor's Secured Lenders exceed the value of the Collateral. As a result, the Trustee determined that there would be no resources to administer the estates without an agreed carve out from the Debtor's Secured Lenders' Collateral. Thus, the Trustee negotiated the Sharing Agreement with the Secured Lenders, which the Court approved on December 21, 2023, pursuant to the *Order Granting Chapter 7 Trustee's Motion for (I) Approval of Sharing Agreement ("Sharing Agreement") and Carve Out with Lenders, and (II) Related Relief* (D.I. 493) (the "Approval Order").

4. Under the Sharing Agreement and Approval Order, "the claims of the Lenders shall be allowed, as of the Conversion Date, in an amount not less than $64.3 million (the "Claim Amount"). The allowed Claim Amount shall be deemed secured by the Collateral to the extent of the value of the Debtors' interest in such Collateral." Sharing Agreement ¶ 5.

5. The Sharing Agreement acknowledges that, as the Final DIP Order provides, the Adequate Protection Amount is secured by "valid, binding, continuing, enforceable, fully perfected, first priority senior replacement liens on and security interests" in all the Debtors' pre- and postpetition assets. Sharing Agreement ¶ Q.

6. The Final DIP Order merely preserved Scan Global's *right to assert* any lien it *may* have in goods in its possession, but did not approve the validity, amount, or priority of any such

liens. Final DIP Order ¶ 5.39. Indeed, the Final DIP Order also expressly preserved and reserved "the rights of the Debtors and all other parties in interest to oppose, and object to, or seek to avoid Scan Global's assertion of any such liens, claims, rights or remedies." *Id.*

7. The Approval Order likewise preserves any rights held by Scan Global in relation to any goods in its possession, provided that the rights of the Trustee and all other parties in interest to oppose and object to any such asserted liens, claims, rights, or remedies are preserved and reserved. Approval Order ¶ 7.

8. On or about February 7, 2024, the Trustee closed a sale of substantially all the Debtors' assets in accordance with the *Order (I) Approving the Sale of Substantially All Assets of the Debtors and Their Estates Free and Clear of Liens, Encumbrances, Claims and Interests, (II) Approving the Assumption and Assignment of Designated Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* (D.I. 534) (the "Sale Order").

9. Similar to the Approval Order, the Sale Order reserved the parties' rights in respect of Scan Global's liens, providing that "Scan Global shall have a lien on the proceeds of the Sale related to such assets in the same order of priority, with the same validity, force, and effect that such lien, if any, had prior to the Sale, and the rights of the Trustee and all other parties in interest to oppose, and object to, or seek to avoid Scan Global's assertion of any such liens, claims, rights or remedies, if any, and to seek any related relief, are preserved and reserved." Sale Order ¶ 11(a).

10. Not only has Scan Global not established its priority or validity of its claimed liens, but it has also failed establish the value of those liens.

11. Notably, while Scan Global may claim only a specific lien for shipping charges related to specific goods, it has failed to identify any specific goods or specific charges, or relate specific charges to specific goods, as necessary to establish a carrier's lien. In addition, Scan

Global has failed to account for any money the Purchaser paid to Scan Global to ship goods in its possession to the Purchaser, such payment would offset any potential shipper's lien.

12.     If Scan Global had established a valid lien (it does not), the lien would only be worth the value of the goods in its possession at the time of the Sale and the proceeds thereof.  *See* UCC § 7-209(a) ("A warehouse has a lien against the bailor on the goods covered by a warehouse receipt or storage agreement or on the proceeds thereof *in its possession*." (emphasis added)). Therefore, under section 363(p)(2) of the Bankruptcy Code, Scan Global bears the burden of establishing the value of those goods in its possession at the time of the Sale.

13.     Scan Global offered no evidence to meet this burden, including the value of the inventory in which it allegedly has a priority lien.  Instead, Scan Global makes unsupported conclusory assertions that do not mee the requisite evidentiary burden.

14.     Scan Global ignores that there was only one bidder who wanted to purchaser the Debtors' inventory on a stand-alone basis, and its bid for the inventory was $500,000, and also included merely a license of the Debtors' intellectual property

15.     Instead, Scan Global asserts that "upon information and belief, the backup bidder was willing to pay $1 million just for the Debtors' intellectual property" and extrapolates from that assertion that the Debtors' inventory therefore must be worth the remaining $4 million of the cash purchase price.  Scan Global Objection ¶ 11. There is no evidentiary support that the inventory was worth $4 million dollars.

16.     Scan Global also relies on the purchase price allocation made by the Purchaser under the Asset Purchase Agreement but ignores that the allocation was not created for the purpose of establishing the value of any particular property for distribution purposes.  The Purchaser's

allocation was solely for tax allocation purposes with no evidentiary weight to demonstrate the actual value of the inventory.

17. In fact, the Asset Purchase Agreement expressly disclaims and forbids any use of the purchase price allocation for establishing the value of distributions to the Debtors' creditors. The Asset Purchase Agreement specifically states that the purchase price allocation made thereunder "shall not, and shall not be interpreted to, have any effect on any distributions to creditors of either or both of the Debtors or Estates." *Asset Purchase Agreement* § 2.6 [D.I. 234-1].

18. Thus, Scan Global cannot rely on the Purchaser's tax document to dispute the Trustee's proposed distribution to creditors when the parties to that tax-driven allocation expressly disclaimed and forbid that it would have any effect on distributions to creditors.

19. In addition, Scan Global offers no evidence to support to its purported allegation that "[a]fter the Conversion Date, Scan Global received multiple requests from customers of the Debtors requesting to purchase directly from Scan Global the goods in Scan Global's possession" and argues that this means the inventory it held had significant value. Obj. ¶ 13.

20. None of these alleged multiple parties bids for the Debtors' inventory, belying Scan Global's belief that the alleged multiple inquiries show a strong demand in the market for the inventory.

21. Had Scan Global thought the inventory was worth in excess of $3 million, it could have credit bid for the inventory and then sold the inventory at a profit to one of the "multiple" customers it alleges was interested. Scan Global made no attempt to credit bid, arguably because it was worth far less than $3 million, and Scan Global knew there was not market for the inventory.

5

22. Moreover, Scan Global acknowledged that they did not warehouse all of the Debtor's inventory – probably 30% was warehoused elsewhere. However, Scan Global does not equate the percentage of the inventory to value received by the Debtor, or apportion any to the inventory in the Debtors possession or in the possession of another third party.

23. Scan Global simply offers no evidence of the value of the inventory in its possession relative to inventory not in its possession. In fact, it offers no evidence of the inventory's value at all.

24. Having failed to meet its burden, Scan Global's Objection must be overruled.[3]

**WHEREFORE,** Trustee respectfully request that the Court enter an order overruling Scan Global's Objection, granting the Trustee's Distribution Motion and granting such other and further relief as the Court deems just.

| | |
|---|---|
| Dated: May 20, 2024<br>Wilmington, Delaware | **BIELLI & KLAUDER, LLC**<br><br>*/s/ David M. Klauder*<br>David M. Klauder (No. 5769)<br>1204 N. King Street<br>Wilmington, DE 19801<br>Phone: 302-803-4600<br>dklauder@bk-legal.com<br><br>*Counsel to George L. Miller, Chapter 7 Trustee for the Bankruptcy Estates of ViewRay Inc., et al.* |

---

[3] The Trustee understands that the DIP Secured Parties and the Prepetition Secured Parties (the "Lenders") have also filed a Reply in support of the Distribution Motion [D.I. 596]. To the extent relevant, the Trustee adopts the positions of the Lenders as set forth in that Reply.